| | |
|---|---|
| 1 | **NICOLE HOROWITZ** (SBN 306828) (nicole.horowitz@ropesgray.com) |
| 2 | **ROPES & GRAY LLP** |
|   | Three Embarcadero Center |
| 3 | San Francisco, CA 94111 |
| 4 | Telephone: (415) 315-6300 |
| 5 | **JOAN MCPHEE**\* (NY SBN 2082246) (joan.mcphee@ropesgray.com) |
|   | **ALEXANDER B. SIMKIN**\* (NY SBN 4463691) (alexander.simkin@ropesgray.com) |
| 6 | **HELEN GUGEL**\* (NY SBN 4910105) (helen.gugel@ropesgray.com) |
| 7 | **ROPES & GRAY LLP** |
|   | 1211 Avenue of the Americas |
| 8 | New York, NY 10036-8704 |
| 9 | Telephone: (212) 596-9000 |
| 10 | Counsel for Plaintiff-Petitioners |
| 11 | *Additional Counsel Listed on Following Page* |

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jacinto Victor ALVAREZ, Joseph BRODERICK, Marlene CANO, Jose CRESPO-VENEGAS, Noe GONZALEZ-SOTO, Victor LARA-SOTO, Racquel RAMCHARAN, George RIDLEY, Michael Jamil SMITH, Leopoldo SZURGOT, Jane DOE, on behalf of themselves and those similarly situated. | **Case No.:** '20CV0782 AJB BGS |
| Plaintiff-Petitioners, | **DECLARATION OF JOSEPH BRODERICK** |
| v. | |
| Christopher J. LAROSE, Senior Warden, Otay Mesa Detention Center, | |
| Steven C. STAFFORD, United States Marshal for the Southern District of California, | |
| Donald W. WASHINGTON, Director of the United States Marshal Service. | |
| Defendants-Respondents. | |

**SIRINE SHEBAYA*** (NY SBN 5094990) (sirine@nipnlg.org)
**MATTHEW VOGEL*** (NY SBN 4406500) (matt@nipnlg.org)
**NATIONAL IMMIGRATION PROJECT**
**THE NATIONAL LAWYERS GUILD**
2201 Wisconsin Ave, NW, Suite 200
Washington, DC 20007
Telephone: (617) 227-9727

**MITRA EBADOLAHI** (SBN 275157) (mebadolahi@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783) (bvakili@aclusandiego.org)
**SARAH THOMPSON** (SBN 323188) (sthompson@aclusandiego.org)
**DAVID LOY** (SBN 229235) (davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &**
**IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187

**GABRIEL ARKLES*** (NY SBN 4391918) (garkles@aclu.org)
**CLARA SPERA*** (NY SBN 5590229) (cspera@aclu.org)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569


*Application for *pro hac vice* forthcoming

**DECLARATION OF JOSEPH BRODERICK**

1. My name is Joseph Broderick. I am a 35-year-old man and have been detained by the United States Marshals Service since December 23, 2019. I have been detained at the Otay Mesa Detention Center since approximately January 13, 2020. Prior to that, I was detained at the Metropolitan Detention Center in Los Angeles.

2. I am currently in pod V. I was moved to V pod about three weeks ago. Prior to that, I was in Q pod.

3. Q pod was quarantined a week after I was transferred to V pod.

4. A week after my cellmate and I were transferred to V pod, we learned that his former cellmate had tested positive for coronavirus and was hospitalized. My cellmate wrote a grievance requesting to be tested because his former cellmate (John Switzer) had tested positive. He received a response saying his grievance had been denied.

5. I filed a grievance about one week ago requesting proper PPE, to be tested for the coronavirus, or to be released if they could not meet those needs. I filed another grievance with the same requests the following day. I have not received a response to either of my grievances.

6. There are supposed to be slips in the pod that we fill out to file a grievance. The slot where the slips are supposed to be was empty for 4-5 days prior to my filing my grievance. I asked the counselor and a few staff workers for grievance slips while the slot was empty, and was told they would have to look into it. They did not offer me any other way to file a grievance. I was unable to file my grievance for 4-5 days.

7. I am in a two-person cell. All of the other cells in my pod have 4 people in them. My cell is approximately 4 feet by 9 feet. There is a bunk bed, a table, and a toilet in the cell. My cell is enclosed but the ventilation system between

the cells is connected. Three days ago somebody about ten cells down, approximately 50 feet away from my cell, was pepper-sprayed. Even though both his door and mine were closed when he was sprayed, my eyes were watering, my nose was running, and I was coughing, in my cell.

8. There are approximately 120 people in the pod altogether. There are still new people entering the pod that I've never seen before. Just today I saw a new person.

9. There is no possible way to keep 6 feet of social distancing when I'm in my cell. My cellmate and I are 3-4 feet apart when we sleep and all throughout the day when we are in the cell.

10. I am locked in my cell from 10 pm until about 5:30 am.

11. At 5:30- 6 am they feed us in the pod. The food is delivered to the pod and left at the door. All 120 of us in the pod then line up to grab a tray one by one. We are side-by-side, about one foot away from each other, when we are in line for our food trays.

12. We walk around and eat wherever we can find space. It is not possible to maintain social distance when we are all in the common areas eating. We are about 2-3 feet apart when we are eating.

13. They lock us back in our cells from 8-9 a.m. for count. At 9 a.m., they unlock the doors again.

14. I work in the kitchen from about 11-11:30 am until about 7:30 pm every day of the week. In the kitchen, I prepare and serve food for the other inmates in the jail. There are about 30 of us working in the kitchen at once. We work shoulder-to-shoulder in the kitchen. We have gloves, and a hair and beard net when working in the kitchen, but no face masks.

15. In the kitchen, I prepare the 6 kosher meals. Once I finish with those, I then work on the food service line, preparing hundreds of trays that are then

delivered to inmates all throughout the facility. I work lunch and dinner daily.

16. P pod and G pod used to prepare and serve breakfast together. P pod was infected and quarantined a week and a half ago, and no longer works in the kitchen. But the G pod staff who worked alongside them are still working and serving breakfast to the whole facility.

17. For the past week, 10 guards have been working with us in the kitchen, serving and preparing trays. The guards working in the kitchen have face masks and gloves.

18. The quarantined pods get their food on disposable Styrofoam trays. All of the other pods still use plastic trays. The water that the used trays are cleaned in splashes all over the kitchen staff. The same staff member who put the dirty trays into the washing machine, who handled the contaminated trays, then removes them. It is not sanitary at all. We requested that only disposable Styrofoam trays be used throughout the facility, but were told it would cost too much.

19. The guards wear gloves and masks while they are in the jail. Some of the guards have paper masks, others are homemade, and some have n-95 masks. They search our cells a few times a week and do not change their gloves when moving from one cell to the next.

20. About 4 days ago, I was offered a face mask if I signed a form saying that I released the jail from all liability if I got sick. I did not sign the form.

21. I crew of inmates cleans the pod every night. They mop the floors, wipe the tables down, and clean the showers once a day.

22. There are 4 shower rooms, each with about 5 shower heads in them. We can shower whenever we want, unless the cells are locked.

23. We receive one small bar of soap a week. If we want antibacterial soap, we have to buy it ourselves from the canteen.

24. A month ago, I had high fever, body aches, coughing, and night sweats. I had a 100 degree fever. I signed up for sick call at 6 in the morning, at 12pm I was taken to medical and waited about 3 hours before the nurse saw me. She took my temperature, looked down my throat, and reviewed my symptoms. She gave me Tylenol, told me to drink water, and gave me salt packets to gargle with water. She told me I had a cold. My symptoms lasted about 4 days. There was no follow-up on my condition and I did not go back to medical.

25. If I were released, I could stay with my sister in Los Angeles. My sister would pick me up from the jail. She has 3-bedrooms in her home and I would be able to quarantine and self-isolate in one of the bedrooms. After quarantining for two weeks, I would stay with my grandmother.

26. This declaration was read back to Mr. Broderick, he agreed that the foregoing is true and correct under penalty of perjury, and consented to my signing on his behalf at approximately 10:35 a.m. on 4/15/2020.

This declaration was read back to Mr. Broderick, he agreed that the foregoing is true and correct under penalty of perjury, and consented to my signing on his behalf at approximately 10:35 a.m. on 4/15/2020.

Signed,

Elana R. Fogel