**SIRINE SHEBAYA*** (NY SBN 5094990) (sirine@nipnlg.org)
**MATTHEW VOGEL*** (LA SBN 35363) (matt@nipnlg.org)
**NATIONAL IMMIGRATION PROJECT**
**OF THE NATIONAL LAWYERS GUILD**
2201 Wisconsin Ave, NW, Suite 200
Washington, DC 20007
Telephone: (617) 227-9727

**MITRA EBADOLAHI** (SBN 275157) (mebadolahi@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783) (bvakili@aclusandiego.org)
**SARAH THOMPSON** (SBN 323188) (sthompson@aclusandiego.org)
**DAVID LOY** (SBN 229235) (davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &**
**IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187

Counsel for Plaintiff-Petitioners
*Additional counsel listed on following page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Jacinto Victor ALVAREZ, Joseph BRODERICK, Marlene CANO, Jose CRESPO-VENEGAS, Noe GONZALEZ-SOTO, Victor LARA-SOTO, Racquel RAMCHARAN, George RIDLEY, Michael Jamil SMITH, Leopoldo SZURGOT, Jane DOE, on behalf of themselves and those similarly situated. <br>      Plaintiff-Petitioners, <br><br>      v. <br><br> Christopher J. LAROSE, Senior Warden, Otay Mesa Detention Center, <br><br> Steven C. STAFFORD, United States Marshal for the Southern District of California, <br><br> Donald W. WASHINGTON, Director of the United States Marshals Service. <br>      Defendant-Respondents. | **Case No.** 3:20-cv-00782-DMS-AHG <br><br> **PLAINTIFF-PETITIONERS' FIRST RESPONSE TO DEFENDANT-RESPONDENTS' MOTION TO DENY PETITION FOR HABEAS CORPUS AND INJUNCTIVE AND DECLARATORY RELIEF** |

**NICOLE HOROWITZ** (SBN 306828) (nicole.horowitz@ropesgray.com)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
TELEPHONE: (415) 315-6300

**JOAN MCPHEE**\* (NY SBN 2082246) (joan.mcphee@ropesgray.com)
**ALEXANDER B. SIMKIN**\* (NY SBN 4463691) (alexander.simkin@ropesgray.com)
**HELEN GUGEL**\* (NY SBN 4910105) (helen.gugel@ropesgray.com)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000

**GABRIEL ARKLES**\* (NY SBN 4391918) (garkles@aclu.org)
**CLARA SPERA**\* (NY SBN 5590229) (cspera@aclu.org)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569

\*Admitted *pro hac vice* / application for admission *pro hac vice* forthcoming

# Table of Contents

INTRODUCTION .................................................................................... 1

LEGAL STANDARD ............................................................................... 2

FACTS ...................................................................................................... 4

ARGUMENT ............................................................................................ 7

      A.    Habeas Is the Appropriate Vehicle for the Relief
            Petitioners Seek ................................................................ 7

      B.    PLRA Exhaustion Requirements Do Not Bar
            Petitioners' Claims Because Administrative Remedies
            Are "Unavailable" ............................................................ 9

      A.    Prudential Exhaustion Under 28 U.S.C. § 2241 Is Not
            Required Where, As Here, Exhaustion Would Be Futile
            Or Irreparable Injury Would Result Without Immediate
            Judicial Review ............................................................. 12

      B.    The Bail Reform Act Does Not Provide A Legal
            Remedy For The Constitutional Violations Petitioners
            Have Alleged ................................................................. 14

      C.    Respondents Plainly Have the Authority to Release
            Petitioners ...................................................................... 18

CONCLUSION ...................................................................................... 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.S.M. v. Donahue*,
  No. 20-CV-62, 2020 WL 1847158 (M.D. Ga. Apr. 10, 2020) ........................ 8

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) ................................................................ 12

*Alcantara v. Archambeault*,
  Case No. 3:20-cv-00756-DMS-AHG, Dkt. 41 .................................... 1, 13, 14

*Aleknagik Natives, Ltd. v. Andrus*,
  648 F.2d 496 (9th Cir. 1980) ................................................................ 13

*Andres v. Marshall*,
  867 F.3d 1076 (9th Cir. 2017) (per curiam) .......................................... 10, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ............................................................................. 3

*Bent v. Barr*,
  No. 19-cv-6123, 2020 WL 1812850 (N.D. Cal. Apr. 9, 2020) ........................ 8

*Brittingham v. United States*,
  982 F.2d 378 (9th Cir. 1992) ............................................................ 18, 19

*Brown v. Rison*,
  895 F.2d 533 (9th Cir. 1990) ................................................................ 13

*Brown v. Valoff*,
  422 F.3d 926 (9th Cir. 2005) ................................................................ 10

*Castillo v. Barr*,
  2020 WL 1502864 (C.D. Cal. Mar. 27, 2020) ........................................... 8

*Chua Han Mow v. United States*,
  730 F.2d 1308 (9th Cir. 1984) ............................................................... 15

*Coreas v. Bounds*,
  No. 20-0780, 2020 WL 1663133 (D. Md. Apr. 3, 2020) ............................... 8

*Dunn v. U.S. Parole Comm'n*,
   818 F.2d 742 (10th Cir. 1987) ......................................................... 19

*Fuqua v. Ryan*,
   890 F.3d 838 (9th Cir. 2018) ........................................................... 12

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ........................................................... 13

*In re Request to Commute or Suspend County Jail Sentences*,
   Docket No. 084230 (N.J. Mar. 22, 2020) .......................................... 7

*Jones v. Bock*,
   549 U.S. 199 (2007) ....................................................................... 12

*Malam v. Adducci*,
   No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020) ............ 8

*Mays v. Dart*,
   No. 20 C 2134, 2020 WL 1812381 (N.D. Ill. Apr. 9, 2020) .............. 8

*McBride v. Lopez*,
   807 F.3d 982 (9th Cir. 2015) ........................................................... 10

*McQuown v. Ives*,
   2017 WL 359181 (D. Or. Jan. 24, 2017) ........................................... 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ........................................................... 3

*Miller v. Fox*,
   No. CV 15-06888 DMG (AFM), 2017 WL 1591939 (C.D. Cal.
   Feb. 1, 2017) ................................................................................... 9

*Money v. Pritzker*,
   2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) .................................... 18

*Muhammad v. Close*,
   540 U.S. 749 (2004) ......................................................................... 8

*Munaf v. Geren*,
   553 U.S. 674 (2008) ......................................................................... 8

*Nettles v. Grounds*,
    830 F.3d 922 (9th Cir. 2016) ......................................................... 8, 9

*Nunez v. Duncan*,
    591 F.3d 1217 (9th Cir. 2010) ..................................................... 10, 12

*Ortuño v. Jennings*,
    Case No. 20-cv-2064-MMC, 2020 WL 1701724 (N.D. Cal. Apr.
    8, 2020) ............................................................................................. 8

*Plata v. Newsom*,
    2020 WL 1908776 (N.D. Cal. Apr. 17, 2020) ................................. 18

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973) ......................................................................... 8

*Reaves v. Dep't of Corr.*,
    404 F. Supp. 3d 520 (D. Mass. 2019).............................................. 14

*Reid v. U.S. Marshals Serv.*,
    Civil Action No. H-08-3196, 2008 WL 479464 (S.D. Tex. Oct.
    30, 2008) ......................................................................................... 18

*Ross v. Blake*,
    136 S. Ct. 1850 (2016) ........................................................ 9, 10, 12

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004) ....................................................................... 18

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .......................................................... 3

*Sapp v. Kimbrell*,
    623 F.3d 813 (9th Cir. 2010) .......................................................... 10

*Shakur v. Milusnic*,
    No. 5:18-cv-00628-SVW-AS, 2019 WL 3207821 (C.D. Cal. Mar.
    7, 2019) ............................................................................................. 9

*Shwarz v. United States*,
    234 F.3d 428 (9th Cir. 2000) ............................................................ 3

*Spring v. Langford*,
    No. CV 16-04664-JLS (DTB), 2017 WL 3326973 (C.D. Cal. May
    22, 2017) ................................................................................................ 9

*Stile v. Stafford Cnty. Dept. of Corr.*,
    Civil Action No. 13-cv-71-PB, 2013 WL 5728107 (D. N.H. Oct.
    21, 2013) .............................................................................................. 18

*Torres v. DHS*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) ................................................ 3

*Turner v. Cash*,
    No. CV 14-4758-JVS (AGR), 2019 WL 1949458 (C.D. Cal. Jan.
    19, 2019) .............................................................................................. 10

*United States v. Davis*,
    No. 1:20-cr-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020) ................... 7

*United States v. Grobman*,
    No. 18-cr- 20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020) .................. 7

*United States v. Harris*,
    No. 19-cr-356 (D.D.C. Mar. 26, 2020) ................................................ 7

*United States v. Hector*,
    Case No. 2:18-cr-3-002, Dkt. No. 748 (W.D. Va. Mar. 27, 2020) ...... 7

*United States v. Mclean*,
    No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020) ................................ 7

*United States v. Meekins*,
    Case No. 1:18-cr- 222-APM, Dkt. No. 75 (D.D.C. Mar. 31, 2020) ..... 7

*United States v. Muniz*,
    Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) .......... 7

*Vasquez-Berrera v. Wolf*,
    No. 20-cv-1241, 2020 WL 1904497 (S.D. Tex. Apr. 17, 2020) .......... 8

*Ward v. Chavez*,
    678 F.3d 1042 (9th Cir. 2012) ............................................................ 13

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ................................................................. 3

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2003) ................................................................. 2

*Wilson v. Williams*,
   No. 20 cv 794, 2020 WL 1940882 (N.D. Ohio, Apr. 22, 2020) ....................... 8

*Ziglar v. Abbassi*,
   137 S. Ct. 1843 (2017) ............................................................................ 8

**Statutes**

18 U.S.C.
   § 3142 ............................................................................................ 15, 16
   § 3142(c) ............................................................................................... 6
   § 3142(e) ............................................................................................... 6
   § 3142(g) ......................................................................................... 15, 16
   § 3142(g)(3)(A) ..................................................................................... 15
   § 3142(i) ......................................................................................... 16, 17
   § 3143 ............................................................................................ 15, 16

28 U.S.C.
   § 2241 ....................................................................................... 9, 12, 18
   § 2241(c)(3) ........................................................................................... 7

42 U.S.C.
   § 1997e ................................................................................................. 9
   § 1997e(a) .............................................................................................. 9

**Other Authorities**

Fed. R. Civ. P. 8(a) ................................................................................... 3

Fed. R. Civ. P. 12(b)(1) .......................................................................... 1, 2

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 3

Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Prevention and Control, Mar. 27, 2020, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf ................................ 4, 18

Josiah Rich, Scott Allen, and Mavis Nimoh, *We Must Release Prisoners to Lessen the Spread of Coronavirus*, WASH. POST, Mar. 17, 2020 .......................................................................................... 6

Kate Morrissey, *Federal judge orders review for release of ICE detainees at Otay Mesa Detention Center due to pandemic*, San Diego Union Tribune, Apr. 30, 2020 .................................................... 1

Kevin McCoy and Katie Wedell, *'On-the-job emergency training': Hospitals may run low on staff to run ventilators for coronavirus patients*, USA Today, Mar. 27, 2020 ...................................................... 4

Xianxian Zhao, et al., *Incidence, clinical characteristics and prognostic factor of patients with COVID- 19: a systematic review and meta-analysis* (Mar. 20, 2020) ........................................ 4

**INTRODUCTION**

In the midst of the worst pandemic the world has seen since 1918, Petitioner-Plaintiffs ("Petitioners") remain detained at the Otay Mesa Detention Center ("Otay Mesa"), a facility that is currently experiencing a significant COVID-19 outbreak. Among them are many who have medical conditions that place them at high risk of severe illness or death should they become infected with the novel coronavirus. Since Petitioners filed this action, at least 70 additional detained people at Otay Mesa have tested positive for the virus—an increase of over 70% in a 7-day period.[1] As this Court has noted, "the current circumstances, and in particular, the circumstances at Otay Mesa, are anything but normal." *Alcantara v. Archambeault*, Case No. 3:20-cv-00756-DMS-AHG, Dkt. 41 at 16. Petitioners' lives and safety are at risk.

Against this backdrop, Respondents move to dismiss[2] the Petition on the grounds that the Prison Litigation Reform Act ("PLRA") requires exhaustion of

---

[1] As of April 23, 2020, OMDC had 97 confirmed COVID-positive cases among detained persons (38 persons detained by USMS and 59 persons detained by Immigration and Customs Enforcement ("ICE")). Kate Morrissey (@bgirledukate), Twitter (Apr. 23, 2020, 10:50 PM), https://twitter.com/bgirledukate/status/1253471366621196288. As of April 30, 2020, OMDC had 167 positive cases in both USMS and ICE custody. Kate Morrissey, *Federal judge orders review for release of ICE detainees at Otay Mesa Detention Center due to pandemic*, San Diego Union Tribune, Apr. 30, 2020, https://www.sandiegouniontribune.com/news/immigration/story/2020-04-30/judge-orders-review-for-release-of-ice-detainees-at-otay-mesa-detention-center.

[2] Respondents style their motion as a "Motion to Deny" the petition, but because they move under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), their motion is properly considered a motion to dismiss. Since tomorrow's emergency hearing relates only to the Medically Vulnerable Subclasses, Petitioners submit this first response to address these jurisdictional issues with respect to the Medically Vulnerable Subclasses. Petitioners are also concurrently filing an objection to Respondents' unilateral noticing of a hearing date on the full Motion to Dismiss for

---

administrative remedies and limits the relief Petitioners may seek from a single district judge; that habeas corpus is not available to Petitioners in this case; and that seeking relief through habeas "unduly duplicates judicial efforts." ECF No. 31 ("MTD") at 2. They propose instead that the hundreds of individuals in USMS custody each seek relief individually through separate applications to this Court or through extended processes that would take weeks if not months to fully resolve. *Id.* at 10–11, 14–15. But Respondents' arguments fundamentally misconstrue the nature of Petitioners' claims. Petitioners seek immediate release of the Medically Vulnerable Subclasses—relief that is "at the core" of habeas corpus. As dozens of courts across the country—including at least three courts within the Ninth Circuit—have found, Petitioners challenging the fact of their confinement on constitutional grounds do so appropriately through habeas petitions. *See infra* at 10 n.14 (citing cases).

The PLRA exhaustion requirements do not apply to habeas petitions. Nor is any prudential exhaustion required where, as here, Petitioners are likely to suffer irreparable injury or where any administrative remedy would be futile. The Bail Reform Act ("BRA") also does not provide an alternative avenue for relief that supplants the need for a habeas petition in this case.

Accordingly, this Court should deny Respondents' motion to dismiss as to the Medically Vulnerable Subclasses.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for "lack of subject matter jurisdiction." Such a motion may either be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2003). A facial challenge "asserts that the allegations contained in the complaint are insufficient on

May 5, 2020, and will separately address the issues that do not pertain to the Medically Vulnerable Subclasses in due course.

their face to invoke federal jurisdiction." *Torres v. DHS*, 411 F. Supp. 3d 1036, 1046 (C.D. Cal. 2019); *see Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In other words, a facial attack challenges the legal sufficiency of a claim, rather than its factual basis. *Safe Air for Everyone* at 1039. "When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true." *Torres* at 1046 (citing *Comm. For Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009)). Here, Respondents raise a facial challenge to subject-matter jurisdiction.[3] "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

Under Rule 12(b)(6), dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In order to meet this standard, a plaintiff must only set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Rule must be read in conjunction with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* at 555. In deciding a motion to dismiss under Rule 12(b)(6), the court must assume that all the allegations in the complaint are true and must construe the complaint in the light most favorable to the non-moving party. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

---

[3] Respondents raise only a *facial* challenge to subject matter jurisdiction in this case, but incorrectly cite the legal standard for a factual challenge.

# FACTS[4]

COVID-19 is a deadly and rapidly spreading global pandemic.[5] The consequences of contracting COVID-19 can be severe. Infected individuals who do not die from the disease may experience serious damage to the lungs, heart, liver, or other organs, resulting in prolonged recovery periods, including extensive rehabilitation from neurological damage, loss of respiratory capacity, and organ failure. Risk of serious illness or death from COVID-19 is even greater in older individuals or individuals of any age who suffer from certain underlying conditions.[6] Most people in higher-risk categories who develop serious illness will need advanced support, including highly specialized equipment like ventilators that are in limited supply and an entire team of care providers, including 1:1 or 1:2 nurse-to-patient ratios, respiratory therapists, and intensive care physicians.[7]

The only known effective measures to reduce the risk of COVID-19 are to prevent infection through social distancing and vigilant hygiene, including hand washing and disinfecting surfaces.[8] These measures are particularly challenging to

---

[4] Petitioners refer the Court to their memorandum of points and authorities in support of their Motion for Emergency Temporary Restraining Order and for Preliminary Injunction (ECF No. 2-2) for a more complete recitation of the facts.

[5] *See* ECF No. 1, ¶¶ 31–52; ECF No. 2-2 at 4–9.

[6] Xianxian Zhao, et al., *Incidence, clinical characteristics and prognostic factor of patients with COVID- 19: a systematic review and meta-analysis* (Mar. 20, 2020), https://www.medrxiv.org/content/10.1101/2020.03.17.20037572v1.article-info.

[7] Kevin McCoy and Katie Wedell, *'On-the-job emergency training': Hospitals may run low on staff to run ventilators for coronavirus patients*, USA Today, Mar. 27, 2020, https://www.usatoday.com/story/news/nation/2020/03/27/coronavirus-hospitals-face-shortages-respiratory-therapists-run-ventilators/2914635001/.

[8] Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Prevention and Control, Mar. 23, 2020, at 8, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.

implement in a congregate environment given the high concentration of people housed in close quarters and limited access to sinks, showers, toilets, water, personal hygiene supplies, and facility cleaning equipment. Cohen Decl. ¶ 10, attached as Exh. A to McPhee Decl. in Support of Reply to TRO; Goldenson Decl. ¶ 19 (ECF No. 1-2). Against this backdrop, Otay Mesa is the site of one of the largest detention facility COVID-19 outbreaks, and the situation at Otay Mesa has only deteriorated since this case was filed.[9]

It is currently impossible for individuals at Otay Mesa to comply with the CDC's recommendation to remain six feet apart at all times. Goldenson Decl. ¶ 27 (ECF No. 1-2). Despite the active outbreak within the facility, individuals remain housed together in pods, which consist of roughly 60 to 120 persons each. *Id.* ¶ 24. All detained individuals are held in close quarters, well under the distance of six feet apart that the CDC recommends. Amon Decl. ¶ 24 (ECF No. 1-3). Within each pod, most individuals share small cells with two or three persons per cell. *See, e.g.*, Lara-Soto Decl. ¶¶ 3, 4, 6 (ECF No. 1-9). When not in their cells, detained persons share common spaces and cannot consistently maintain a six-foot distance from others. Arreola Decl. ¶ 6, attached as Exh. B to McPhee Decl. in Support of Reply to TRO; Szurgot Decl. ¶ 11 (ECF No. 1-6); Lara-Soto Decl. ¶ 42 (ECF No. 1-9). Ridley Decl. ¶ 8 (ECF No. 1-4); Doe Decl. ¶ 5 (ECF No. 1-5). Chairs and tables in communal areas are bolted to the ground and chairs are less than three feet apart. Ridley Decl. ¶ 7 (ECF No. 1-4); Doe Decl. ¶ 4 (ECF No. 1-5); Jamil-Smith Decl. ¶ 6 (ECF No. 1-10). To watch television, individuals have to sit in close proximity to each other. Crespo-Venegas Decl. ¶ 6 (ECF No. 1-11); Gonzalez-Soto Decl. ¶ 9 (ECF No. 1-12); Lara-Soto Decl. ¶ 26 (ECF No. 1-9).

---

[9] *See* discussion at Section I.a of Petitioners' Reply in Support of Emergency Motion for Temporary Restraining Order.

In addition to the impossibility of social distancing within Otay Mesa, the hygienic situation in the facility is inadequate to abate the spread of COVID-19. Goldenson Decl. ¶ 30 (ECF No. 1-2), Amon Decl. ¶ 53 (ECF No. 1-3).[10] Yet Otay Mesa is not conducting widespread COVID-19 testing or even consistently testing those who report flu-like symptoms. Amon Decl. ¶ 24 (ECF No. 1-3); Szurgot Decl. ¶ 10 (ECF No. 1-6); Lara-Soto Decl. ¶ 46 (ECF No. 1-9). Sick individuals are given pills or told to drink water with salt. Lara-Soto Decl. ¶ 46 (ECF No. 1-9); Doe Decl. ¶ 14 (ECF No. 1-5); Broderick Decl. ¶ 24 (ECF No. 1-8). Numerous detained persons report remaining in a pod with dozens of asymptomatic individuals after reporting their symptoms. Amon Decl. ¶ 34 (ECF No. 1-3).

Because of the severity of the threat posed by COVID-19, and its potential to rapidly spread throughout a detention setting, public health experts recommend, first and foremost, the rapid release from custody of people with heightened vulnerability to COVID-19.[11] Release of medically vulnerable people from detention is especially important given the heightened risks to their health and safety and given the lack of a viable vaccine for prevention or effective treatment at this stage. Amon Decl. ¶ 50 (ECF No. 1-3). Release protects medically vulnerable people from transmission of the virus, and also allows for greater risk

---

[10] *See also* Alvarez Decl. ¶¶ 6–7 (ECF No. 1-7); Gonzalez-Soto ¶ 15 (ECF No. 1-12); Cano Decl. ¶ 10 (ECF No. 1-15) (limited availability of soap); Ramcharan Decl. ¶ 6 (ECF No. 1-13); Alvarez Decl. ¶ 6 (ECF No. 1-7); Szurgot Decl. ¶ 5 (ECF No. 1-6) (limited availability of hand sanitizer); Cano Decl. ¶ 8 (ECF No. 1-15); Jamil-Smith Decl. ¶ 21 (ECF No. 1-10); Szurgot Decl. ¶ 4 (ECF No. 1-6); Amon Decl. ¶ 24 (ECF No. 1-3) (insufficient surface disinfection); Cano Decl. ¶ 9 (ECF No. 1-15); Doe Decl. ¶ 6 (ECF No. 1-5); Ramcharan Decl. ¶ 5 (ECF No. 1-13) (frequency of shower cleaning); Gonzalez-Soto Decl. ¶ 4 (ECF No. 1-12) (telephones closely spaced and not cleaned after each use).

[11] *See, e.g.*, Josiah Rich, Scott Allen, and Mavis Nimoh, *We Must Release Prisoners to Lessen the Spread of Coronavirus*, WASH. POST, Mar. 17, 2020, https://wapo.st/2JDVq7Y.

mitigation for remaining detained individuals, detention center staff, and the surrounding community. Amon Decl. ¶ 52 (ECF No. 1-3). Release of medically vulnerable people from custody also reduces the burden on the region's health care infrastructure by reducing the likelihood that an overwhelming number of people will become seriously ill from COVID-19 at the same time. *Id.* In recognition of these and other reasons, a growing number of courts have ordered release from confinement and modifications of supervised release for individuals in the federal criminal system in response to COVID-19.[12]

## ARGUMENT

## I.  This Court Has Subject-Matter Jurisdiction Over the Medically Vulnerable Subclasses' Habeas Petition.

### A.  Habeas Is The Appropriate Vehicle For The Relief Petitioners Seek.

Petitioners seek habeas relief. *See* ECF No. 1 ¶¶ 14–16, 79–81. Contrary to Respondents' assertions, MTD at 15–16, habeas is the appropriate vehicle for the relief Petitioners—and particularly the Medically Vulnerable Subclasses—seek. Habeas relief is available to persons who, like Petitioners, are "in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). The Medically Vulnerable Subclasses' claim—that their continued detention at Otay Mesa is unconstitutional, and that they are entitled to immediate

---

[12] *See, e.g.*, *United States v. Meekins*, Case No. 1:18-cr- 222-APM, Dkt. No. 75 (D.D.C. Mar. 31, 2020); *United States v. Davis*, No. 1:20-cr-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020); *United States v. Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020); *United States v. Hector*, Case No. 2:18-cr-3-002, Dkt. No. 748 (W.D. Va. Mar. 27, 2020); *United States v. Grobman*, No. 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020); *United States v. Mclean*, No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020).

release—lies "within the core of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).[13] And in fact, dozens of courts around the country have found that habeas jurisdiction is proper for actions challenging the fact of confinement in light of the COVID-19 pandemic.[14]

Even where the relief sought is not limited to release, moreover, the Ninth Circuit has not accepted Respondents' attempt to differentiate between challenges to the fact or duration of confinement and challenges to conditions of confinement. Although the Ninth Circuit has held that individuals in *state* prisons may not bring § 2245 habeas petitions to challenge their conditions of confinement, the Court expressly did not decide whether the same limits apply to individuals in federal custody. *Nettles v. Grounds*, 830 F.3d 922, 931 (9th Cir. 2016); *see also Ziglar v. Abbassi*, 137 S. Ct. 1843, 1862–63 (2017) (the Supreme Court has "left open the question whether [petitioners] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus"). Numerous district courts

---

[13] The Supreme Court has held repeatedly that "challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004); *see also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention.").

[14] *See*, *e.g.*, *Bent v. Barr*, No. 19-cv-6123, 2020 WL 1812850, at *2 (N.D. Cal. Apr. 9, 2020); *Ortuño v. Jennings*, Case No. 20-cv-2064-MMC, 2020 WL 1701724, at *2 (N.D. Cal. Apr. 8, 2020); *Castillo v. Barr*, 2020 WL 1502864, at *3 (C.D. Cal. Mar. 27, 2020); *Vasquez-Berrera v. Wolf*, No. 20-cv-1241, 2020 WL 1904497, at *4 (S.D. Tex. Apr. 17, 2020) ("The mere fact that Plaintiffs' constitutional challenge requires discussion of conditions in immigration detention does not necessarily bar such a challenge in a habeas petition."); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662, at *2–3 (E.D. Mich. Apr. 5, 2020); *Coreas v. Bounds*, No. 20-0780, 2020 WL 1663133, at *7 (D. Md. Apr. 3, 2020); *Mays v. Dart*, No. 20 C 2134, 2020 WL 1812381, at *6 (N.D. Ill. Apr. 9, 2020); *A.S.M. v. Donahue*, No. 20-CV-62, 2020 WL 1847158, at *1 (M.D. Ga. Apr. 10, 2020); *Wilson v. Williams*, No. 20 cv 794, 2020 WL 1940882, at *6 (N.D. Ohio, Apr. 22, 2020).

1    within the Ninth Circuit have declined to extend the holding in *Nettles* to habeas

2    petitions brought by individuals in federal custody under § 2241.[15] Particularly

3    where, as here, Petitioners seek release as the first remedy, a habeas petition is the

4    appropriate vehicle for their claims.

5           **B.    PLRA Exhaustion Requirements Do Not Bar Petitioners' Claims**
            **Because Administrative Remedies Are "Unavailable"**

6

7           Because the Medically Vulnerable Subclasses seek immediate release

8    pursuant to a proper habeas petition, the PLRA plainly does not apply, 42 U.S.C. §

9    1997e, and there is no mandatory exhaustion requirement that would interfere with

10   the Court's jurisdiction in this case. However, even if the PLRA did apply,

11   exhaustion is not required where, as here, administrative remedies are not

12   "available," either in fact or in practice. 42 U.S.C. § 1997e(a); *see Ross v. Blake*,

13   136 S. Ct. 1850 (2016).[16]

14

15   [15] *See, e.g.*, *Spring v. Langford*, No. CV 16-04664-JLS (DTB), 2017 WL 3326973,
     at *3 (C.D. Cal. May 22, 2017) (declining to extend *Nettles* to a federal prisoner's

16   habeas petition challenging BOP restitution payment plan even though the petition

17   "challenges neither the validity nor duration of petitioner's confinement"); *Miller
     v. Fox*, No. CV 15-06888 DMG (AFM), 2017 WL 1591939, at *2 (C.D. Cal. Feb.

18   1, 2017) (declining to apply *Nettles* to a federal petitioner challenging his placement

19   in administrative segregation); *McQuown v. Ives*, 2017 WL 359181, at *4 n.1 (D.
     Or. Jan. 24, 2017) (declining to extend *Nettles* to federal prisoners proceeding under

20   28 U.S.C. § 2241); *Shakur v. Milusnic*, No. 5:18-cv-00628-SVW-AS, 2019 WL

21   3207821, at *4–5 (C.D. Cal. Mar. 7, 2019) (holding that *Nettles* would not apply to
     a federal petitioner challenging a parole decision).

22

23   [16] In *Ross*, the Supreme Court clarified that the PLRA only requires exhaustion of
     remedies that "are capable of use to obtain relief." *Id.* at 1859. The Court provided

24   three non-exhaustive examples where administrative remedies may be deemed

25   unavailable: (1) where the remedial scheme "operates as a simple dead end"
     because prisons are "unable or consistently unwilling to provide any relief to

26   aggrieved inmates"; (2) when the administrative scheme is "so opaque that it

27   becomes, practically speaking, incapable of use"; and (3) when prison
     administrators "thwart inmates from taking advantage of a grievance process

28

1    Here, although Respondents describe a grievance process in their

2  submission, *see* ECF 31-3, L. Mileto Decl., that process is effectively unavailable

3  given, among other things, (1) the functional lack of any emergency review process

4  that can provide timely relief in the face of imminent danger; and (2) the challenges

5  detained persons must overcome to become aware of, let alone access, appropriate

6  channels for relief.   Based on Respondents' submission, Otay Mesa appears to have

7  at least three different grievance processes, only one of which is described in the

8  Detainee Admission and Orientation Handbook ("Detainee Handbook"), and all of

9  which appear to take several weeks to fully exhaust. *Id.* Notably, the process

10  described in the Detainee Handbook applies neither to medical care nor to "any

11  matters relating to the USMS." *Id.*

12    Although the facility asserts that there is an emergency grievance process,

13  the form provided does not include any way to mark the grievance as urgent. And

14  even though Petitioner Broderick submitted a COVID-19 related grievance in

15  which he stated <u>*that he fears for his life*</u>, Respondents failed to answer his grievance

16

17  _____

18  through machination, misrepresentation, or intimidation." *Id.* at 1859–60. The

19  Ninth Circuit has also found that administrative remedies are effectively

19  unavailable in numerous contexts, including situations characterized by

20  administrative delays, improper grievance screening, or threats of retaliation. *See,*

21  *e.g.*, *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam) (failure

21  to process grievances); *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (threat

22  of retaliation); *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010); *Nunez v.*

22  *Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *Brown v. Valoff*, 422 F.3d 926, 943

23  n.18 (9th Cir. 2005) ("Delay in responding to a grievance, particularly a time-

24  sensitive one, may demonstrate that no administrative process is in fact available.");

25  *see also Turner v. Cash*, No. CV 14-4758-JVS (AGR), 2019 WL 1949458, at *6

25  (C.D. Cal. Jan. 19, 2019), *report and recommendation adopted*, No. CV 14-4758-

26  JVS (AGR), 2019 WL 1237142 (C.D. Cal. Mar. 18, 2019) (the fact that plaintiff

27  previously filed successful grievances does not show that prison officials did not

27  thwart his efforts to file a grievance regarding the specific incident at issue).

28  _____

for a full nine days. *Id.*[17] On this timeline, the entire facility will be infected with COVID-19 before Petitioners can get past the first stage of the process, much less fully exhaust their administrative remedies.

Additionally, since individuals are now unable to leave their housing pods, they are unable to access the library or obtain any information pertinent to grieving "matters relating to USMS"—which presumably include requests for release or transfer because of the risk of COVID-19 exposure. It also remains wholly unclear how individuals detained at Otay Mesa can grieve concerns about medical care, which must be submitted separately to the Immigration Health Services Corps ("IHSC"), which provides medical care at Otay Mesa. Broderick Decl. ¶ 11 (ECF

___

[17] *See also* Broderick Decl. ¶ 6 (ECF No. 1-8) ("There are supposed to be slips in the pod that we fill out to file a grievance. I asked the counselor and a few staff workers for grievance slips while the slot was empty, and was told they would have to look into it. They did not offer me any other way to file a grievance. I was unable to file my grievance for 4-5 days."); Arreola Decl. ¶¶ 20–22, attached as Exh. B to McPhee Decl. in Support of Reply to TRO ("Around Monday, April 27, I filled out a complaint on a form titled 'Inmate or Resident Complaint' and put it in the mailbox. Officer Leyva took the complaint out of the mailbox and put it back in my hands. He said something to me, but I did not understand because he said it in English and I do not understand English. . . . Later that day or around that day, my counselor accepted the complaint. I have not received a response yet. . . . I still feel unsafe at CCA and I am afraid the staff will retaliate against me if I make complaints. I do not feel that staff are taking my concerns seriously."); Ridley Decl. ¶ 14 (ECF No. 1-4) ("The grievances are a cat and mouse game. Instead of fixing things, the guards tell you to file a grievance. Then time passes and nothing happens."); Doe Decl. ¶ 23 (ECF No. 1-5) ("Other women have filed grievances about medical treatment, but I do not think the jail has responded to them favorably."); Alvarez Decl. ¶ 14 (ECF No. 1-7) ("I have not filed a grievance because I have seen other people file grievances or try to talk to the warden and the jail ignores their concerns."); Gonzalez-Soto Decl. ¶ 18 (ECF No. 1-12) ("Several of us asked [the counselor] for help, and we weren't being given help by the counselor. There were two more who were also there who asked for help and didn't get it.").

___

No. 1-8). Under the current exigent circumstances, the grievance process Respondents describe "operates as a simple dead end" and is incapable of "provid[ing] any relief to aggrieved inmates." *Ross* at 1859.

Because the PLRA plainly does not apply to habeas petitions, this Court has jurisdiction regardless of whether Petitioners have satisfied the PLRA's exhaustion requirement. Even under the PLRA, however, in the current context, the administrative grievance process is "unavailable," and Petitioners are not required to exhaust. *Id.*; *see also Fuqua v. Ryan*, 890 F.3d 838 (9th Cir. 2018); *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017); *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).[18]

## II.    Petitioners Have Stated A Claim Upon Which Relief May Be Granted.

### A.    Prudential Exhaustion Under 28 U.S.C. § 2241 Is Not Required Where, As Here, Exhaustion Would Be Futile Or Irreparable Injury Would Result Without Immediate Judicial Review.

In addition to raising inapplicable mandatory exhaustion arguments under the PLRA, Respondents also argue that the Petition should be dismissed because administrative exhaustion is required for habeas petitions, and Petitioners have not exhausted their administrative remedies. MTD at 14–15. But in the present circumstances, exhaustion is not required. For habeas claims, "[t]he exhaustion

---

[18] It is also well-settled that failure to exhaust is an affirmative defense, and that Respondents have the burden of proving the availability of administrative remedies. *See Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (holding that "the ultimate burden of proof remains with the defendants" to "prove there was an available administrative remedy" under the PLRA; *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Respondents do not even come close to carrying their burden here, where all they have submitted is an excerpt of a manual, signature pages, and a single grievance that did not result in any meaningful response. *See* ECF No. 31-3, L. Mileto Decl.

requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). And "[u]nless statutorily mandated, application of the doctrine [of prudential exhaustion] is in the sound discretion of the courts." *Aleknagik Natives, Ltd. v. Andrus*, 648 F.2d 496, 500 (9th Cir. 1980). The requirement is not absolute, and courts have recognized a range of circumstances in which exhaustion should be waived, including: "if administrative remedies are inadequate or not efficacious; where pursuit of administrative remedies would be a futile gesture; [and] [w]here irreparable injury will result unless immediate judicial review is permitted." *Id.* at 499 (internal citations omitted); *see also Hernandez*, 872 F.3d at 988.

Here, any delay in judicial review would clearly result in irreparable injury. The Medically Vulnerable Subclasses are at high risk of serious illness or death should they contract COVID-19, and they do not have the luxury of time; they need immediate relief from this Court. The number of COVID-19 cases at Otay Mesa is rising exponentially. And as this Court recently found, the measures the facility has taken "do[] not appear to be working as planned," *Alcantara* at 5, and "it is clear those policies and procedures are insufficient to protect the medically vulnerable population." *Id.* at 17.

Moreover, there are no administrative remedies available to Petitioners that would result in the relief they seek. There is no agency mechanism through which Petitioners can seek release, or even systematic reforms short of release that could lead to an ability to socially distance and protect themselves against the virus. *See id.* at 5 (social distancing is not required and not possible to enforce at Otay Mesa). As discussed above, the grievance processes Respondents describe are fundamentally incapable of providing the quick and emergent relief Petitioners seek. *See supra* Section I.B. Any attempts at exhaustion would thus be futile. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion may be waived

if administrative remedies would be futile). Accordingly, any prudential exhaustion requirements are inapplicable in this case.[19]

**B.    The Bail Reform Act Does Not Provide A Legal Remedy For The Constitutional Violations Petitioners Have Alleged.**

Respondents insist that "individualized, case-specific determinations [pursuant to the BRA] are the only appropriate legal avenue through which Petitioners may seek release due to the threat to health and safety posed by COVID-19." MTD at 9; *see id.* at 13 & 17. Respondents appear to advance two distinct arguments: that Petitioners and class members must first pursue a remedy under the BRA as a form of prudential exhaustion, or, alternatively, that the BRA itself functions as the exclusive legal remedy for Petitioners' constitutional claims, such that no relief under habeas is available at all.[20] Both arguments misapprehend this Circuit's habeas jurisprudence and Petitioners' claims.

---

[19] Respondents also argue that the PLRA precludes the relief Petitioners seek. Because this is a habeas petition, the PLRA does not apply. But even if it did, the PLRA does not preclude an order requiring transfer of Petitioners to a different form of custody. Thus, should this Court find that the PLRA applies to some or all of the Petitioners in this case, it may order the transfer of Petitioners to home detention, rather than outright release. *See Reaves v. Dep't of Corr.*, 404 F. Supp. 3d 520 (D. Mass. 2019) (ordering transfer and finding that a three-judge panel is not required for release orders that are not based solely on overcrowding). Here, the relief Petitioners seek may be effected through an order of release or enlargement of custody, or alternatively through an order requiring transfer to a different form or location of custody. The latter would be consistent with the PLRA.

[20] In places, Defendants imply that pursuit of release under the BRA is a form of administrative exhaustion required under the PLRA. *See* MTD at 12. This position finds no support in the law. The PLRA sets out a completely separate statutory scheme related to certain conditions of confinement. By contrast, the BRA governs when a particular federal defendant may be released or detained pretrial or presentencing. The two laws do not overlap or cross reference each other in any way.

Petitioners' First Response in Opp. to Respondents' MTD the Petition 20cv00782
-14-

First, the BRA is not a form of administrative exhaustion, and none of the traditional reasons for prudential exhaustion of administrative remedies apply here. *See*, *e.g.*, *Chua Han Mow v. United States*, 730 F.2d 1308, 1313 (9th Cir. 1984) (exhaustion of remedies allows "the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings."). Moreover, as discussed in Section II.A above, any prudential exhaustion requirements are excused under the current circumstances in any event.

Respondents' alternative argument—that the BRA provides the exclusive legal remedy for Petitioners—is unavailing. The BRA addresses whether an individual is released or detained before trial or sentencing with two goals: preventing flight and danger to the community. 18 U.S.C. §§ 3142, 3143. By contrast, the common question presented for the entire class represented in the petition for habeas relief is whether their continued confinement at Otay Mesa violates their constitutional rights to due process or to be free from cruel and unusual punishment. No proceeding under the BRA permits an assessment of this question—much less provides for its resolution. Rather, the BRA directs judicial officers to consider various factors in determining whether an individual is likely to flee or pose a danger to the community if released pretrial, *see* 18 U.S.C. § 3142(g), or presentencing, *id.* § 3143. None of these factors require the presiding judicial officer to consider the presence of a deadly and highly contagious viral outbreak within the detention facility.[21] Accordingly, none of these factors include an assessment of the constitutionality of continued confinement.

---

[21] Respondents argue that the BRA "expressly allows district courts to consider an individual defendant's health when deciding whether to detain him or her pending trial." MTD at 9. Yet, although 18 U.S.C. § 3142(g)(3)(A) requires an assessment

1     Respondents also argue that individual defendants "may seek release under

2  18 U.S.C. § 3142(i)." MTD at 17. This, too, is not an "alternative" remedy available

3  to Petitioners, much less an adequate alternative. First, § 3142(i) operates against

4  the same backdrop as the overall BRA scheme—that is to say, the focus is on risk

5  of flight or danger to community, not the constitutionality of continued detention

6  amid an unprecedented public health crisis.[22] Indeed, when Petitioner Ridley filed

7  a motion for review of his detention order on April 15, 2020 and raised arguments

8  pursuant to § 3142(i), prosecutors responded by arguing that the § 3142(g) factors

9  "do not support setting bond," and that, because Petitioner Ridley had "failed to

10  present evidence suggesting that the detention facility would be unable to render

11  appropriate medical treatment to him if he became ill," his continued detention was

12  proper notwithstanding the COVID-19 pandemic. Ebadolahi Decl. ¶¶ 2–3 & Exs.

13  A & B.[23]

14     Second, § 3142(i) is not even available to all members of the Medically

15  Vulnerable Subclasses. Section 3142(i) does not apply to post-trial defendants

16  detained under § 3143 at all. And § 3142(i) applies only to individuals ordered

17  detained under § 3142(e). Not all Petitioners are subject to § 3142(e) detention

18  orders. (For some, bond has been set pursuant to § 3142(c), but many may not be

19

20  _____

21  of an individual's "physical and mental condition," the BRA is clear that these
   factors are only relevant to "determining whether there are conditions of release
22  that will reasonably assure the appearance of the person as required and the safety
   of any other person and the community." 18 U.S.C. 3142.

23

24  [22] Respondents state only that "[c]ertain *extreme* medical circumstances *may*
   present 'compelling reasons' that *could* warrant a *highly circumscribed* release."
25  MTD at 17 (emphases added). Their language underscores the limits of § 3142(i)
   relief, and why the theoretical *possibility* of that relief for *some* Petitioners is
26  insufficient to displace Petitioners' classwide habeas claims.

27  [23] Petitioner Ridley's motion remains pending before this Court.

28

able to post bond or, if they lack lawful status, would simply be transferred to ICE custody elsewhere in Otay Mesa if they were to post bond.)

Finally, even in those cases where § 3142(i) is theoretically available, the release contemplated under that provision is to "a United States marshal or another appropriate person," which underscores why BRA remedies are not sufficient to address the Petitioners' constitutional claims. The *possibility* of release to a "United States marshal or another appropriate person" for a limited subset of the individuals in harm's way falls far short of the relief Petitioners seek by way of their habeas claims.

Respondents place heavy weight on the Attorney General's April 6, 2020, memorandum regarding the Department of Justice's stance on detention issues during the ongoing pandemic. ECF No. 31-1. While the Attorney General's decision to recommend that DOJ attorneys consider the pandemic and COVID-19 vulnerability is laudable, people being held in unconstitutional conditions are not required to rely on the good will of government prosecutors to secure relief. Moreover, while the Attorney General has recommended that a "defendant's risk from COVID-19 should be a significant factor in [a prosecutor's] analysis," prosecutors in this district have taken a decidedly different tack, repeatedly arguing that "COVID-19 does not alter the statutory analysis" under the BRA. Ebadolahi Decl. ¶¶ 4–11 & Exs. C–J. When the Petitioners have attempted to obtain relief under the BRA, prosecutors have argued that neither the pandemic nor any individual Defendant's preexisting medical conditions control the BRA assessment. *See*, *e.g.*, Ebadolahi Decl. ¶ 7 & Ex. F.

The Medically Vulnerable Subclasses are entitled to have a court determine whether their confinement is unconstitutional—and, if so, they are entitled to relief.

Providing such relief is simply not what the BRA is designed to do. Thus, the BRA does not supply an alternative legal remedy for Petitioners' habeas claims.[24]

## C.   Respondents Plainly Have The Authority To Release Petitioners.

While Respondents concede that they are the "immediate custodian" of Petitioners, MTD at 16, they perplexingly argue that they are without authority to release Petitioners—even with a court order. This is incorrect. For individuals in criminal custody, it is well-established that the proper respondent in a federal habeas corpus action is the petitioner's immediate custodian, or the person who has day-to-day control over the petitioner. *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir. 1992). "The default rule is that the immediate custodian is the warden of the facility where the petitioner is being held." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Stile v. Stafford Cnty. Dept. of Corr.*, Civil Action No. 13-cv-71-PB, 2013 WL 5728107 (D. N.H. Oct. 21, 2013) (naming the House of Corrections and the United States Marshal as the proper respondents in a habeas corpus action filed pursuant to 28 U.S.C. § 2241); *Reid v. U.S. Marshals Serv.*, Civil Action No. H-08-3196, 2008 WL 479464 (S.D. Tex. Oct. 30, 2008) (considering a § 2241 brought against the U.S. Marshals Service and noting that that, among its duties, the Marshals Service is responsible for maintaining custody of certain prisoners).[25]

---

[24] Defendants' citation to *Money v. Pritzker*, 2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) and *Plata v. Newsom*, 2020 WL 1908776 (N.D. Cal. Apr. 17, 2020) to support their assertion that "[i]ndividual motions for release under the BRA…are the proper legal vehicle for Petitioners to attempt to obtain release," MTD at 13, is puzzling. Both of those cases involved *state* prisoners to whom the BRA does not even apply and do not discuss the BRA at all.

[25] *See also* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Prevention and Control, Mar. 23, 2020, at 1, https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (listing the U.S. Marshals Service as a law enforcement agency that has "custodial authority for detained populations"); *cf. Brittingham*, 982 F.2d at 380

---

1
2
Consequently, Respondents would clearly be able to effect the relief this Court orders should this Court order Petitioners' release.

3
## CONCLUSION

4
5
For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss the Petition with respect to the Medically Vulnerable Subclasses.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(finding that the warden, and not the U.S. Marshals Service, was the immediate custodian of the petitioner where the Marshals Service was responsible only for the transportation of the petitioner and did not have "day-to-day control"); *Dunn v. U.S. Parole Comm'n*, 818 F.2d 742, 744 (10th Cir. 1987) ("So long as the petitioner names as respondent a person or entity with power to release him, there is no reason to avoid reaching the merits of his petition.").

1                                                     Respectfully submitted,

2

3   DATED: May 4, 2020                    **NATIONAL IMMIGRATION**
                                          **PROJECT OF THE NATIONAL**
4                                         **LAWYERS GUILD**

5
                                          */s/ Sirine Shebaya*
6

7                                         **SIRINE SHEBAYA**
                                          (sirine@nipnlg.org)
8                                         **MATTHEW VOGEL**
                                          (matt@nipnlg.org)
9                                         2201 Wisconsin Ave, NW
                                          Suite 200
10                                        Washington, DC 20007
                                          Telephone: (617) 227-9727
11

12                                        **ACLU FOUNDATION OF SAN**
                                          **DIEGO & IMPERIAL**
13                                        **COUNTIES**

14                                        **MITRA EBADOLAHI**
                                          (mebadolahi@aclusandiego.org)
15                                        **BARDIS VAKILI**
                                          (bvakili@aclusandiego.org)
16                                        **SARAH THOMPSON**
                                          (sthompson@aclusandiego.org)
17                                        **DAVID LOY**
                                          (davidloy@aclusandiego.org)
18                                        P.O. Box 87131
                                          San Diego, CA 92138-7131
19                                        Telephone: (619) 398-4187

20
                                          **ROPES & GRAY LLP**
21

22   DATED: May 4, 2020                   */s/ Joan McPhee*

23

24                                        **JOAN MCPHEE**
                                          (joan.mcphee@ropesgray.com)
25                                        **ALEXANDER B. SIMKIN**
                                          (alexander.simkin@ropesgray.com)
26                                        **HELEN GUGEL**
                                          (helen.gugel@ropesgray.com)
27                                        1211 Avenue of the Americas
                                          New York, NY 10036-8704
28                                        Telephone: (212) 596-9000

NICOLE HOROWITZ
(nicole.horowitz@ropesgray.com)
Three Embarcadero Center
San Francisco, CA 94111
TELEPHONE: (415) 315-6300

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

GABRIEL ARKLES
(garkles@aclu.org)
CLARA SPERA
(cspera@aclu.org)
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569