UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACINTO VICTOR ALVAREZ, JOSEPH BRODERICK, MARLENE CANO, JOSE CRESPO-VENEGAS, NOE GONZALEZ-SOTO, VICTOR LARA-SOTO, RACQUEL RAMCHARAN, GEORGE RIDLEY, MICHAEL JAMIL SMITH, LEOPOLDO SZURGOT, JANE DOE, on behalf of themselves and those similarly situated,<br><br>    Plaintiffs-Petitioners,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>    Defendants-Respondents. | Case No.:  20-cv-00782-DMS (AHG)<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |

  This case is the second one to come before this Court concerning the detention of persons in Otay Mesa Detention Center ("Otay Mesa" or "OMDC") in light of the COVID-19 pandemic.  The first case, *Alcantara, et. al., vs. Archambeault, et. al.*, No. 20cv00756, concerned civil detainees in immigration custody.  In that case, this Court provisionally certified a subclass of medically vulnerable civil immigration detainees at OMDC and

found they had established a likelihood of success on their Fifth Amendment due process claim in light of the conditions and their treatment at the facility. Based on that showing, the Court granted the plaintiffs' motion for a temporary restraining order and directed the defendants to immediately review for release those subclass members. That process is underway.

The claims in the present case are virtually identical to those raised in *Alcantara*, but Plaintiffs in this case are situated differently. Unlike the plaintiffs in *Alcantara*, who are civil immigration detainees, Plaintiffs here are criminal detainees either awaiting trial or sentencing in federal court. That difference places these detainees in an entirely different position from those in *Alcantara*, as Congress, through the Prison Litigation Reform Act ("PLRA"), has imposed significant limitations on court intervention in matters that are traditionally within the discretion of the Executive Branch and its prisons. There is no dispute Plaintiffs are "prisoners" under the PLRA,[1] and if subject to its provisions this Court may not order the release of Plaintiffs. For the reasons set forth below, the Court finds the PLRA applies to Plaintiffs' claims and divests the Court of authority to grant the requested relief. Accordingly, Plaintiffs' motion for temporary restraining order is denied.

## I.

## BACKGROUND

Otay Mesa separately houses both Immigration and Customs Enforcement ("ICE") civil detainees and United States Marshall Service ("USMS") criminal detainees. Plaintiffs in this case fall into the latter category. On April 25, 2020, when the present case was filed, there were approximately 340 criminal detainees at OMDC. (Mot. for TRO at 9). It

---

[1] *See* 18 U.S.C. § 3626(g)(3) (defining "prisoner" as "any person subject to incarceration, detention, or admission to any facility who is accused of, convicted of, sentenced for, … violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program").

appears that as of May 5, 2020, 66 of these detainees have tested positive for COVID-19.[2] Plaintiffs allege the virus will continue to proliferate in the detention facility because of Defendants' failure to reduce the OMDC population, maintain adequate cleaning and hygiene standards, and comply with Center for Disease Control ("CDC") guidelines for detention facilities. (*Id.*). Plaintiffs include declarations of detainees in support of these allegations.

As a result of Defendants' alleged inaction in controlling the COVID-19 outbreak at OMDC, Plaintiffs filed the present motion for TRO, seeking the release of the medically vulnerable pretrial and post-conviction detainee subclasses. Plaintiffs define medically vulnerable as individuals who are aged 45 years or older or who have medical conditions that the CDC has determined increase their likelihood of becoming severely ill from COVID-19. Plaintiffs allege Defendants' failure to implement adequate measures to protect detainees amounts to unconstitutional punishment in violation of the Fifth Amendment and constitutes deliberate indifference to the detainees' rights under the Eighth Amendment. Defendants concede Plaintiffs' factual allegations but contend the PLRA precludes this Court from issuing the relief Plaintiffs seek. In light of Defendants' arguments under the PLRA, the Court has deferred briefing on class certification and declines to address the balance of Defendants' arguments, which include arguments under the PLRA for failure to exhaust remedies and Plaintiffs' failure to seek relief under the Bail Reform Act in their respective pending criminal cases. Those matters may be raised in the briefing on the upcoming hearing on Plaintiffs' motion for preliminary injunction.

/ / /

/ / /

---

[2] Kate Morrissey, *First ICE detainee dies from COVID-19 after being hospitalized from Otay Mesa Detention Center*, San Diego Union Tribune (May 6, 2020), https://www.sandiegouniontribune.com/news/immigration/story/2020-05-06/first-ice-detainee-dies-from-covid-19-after-being-hospitalized-from-otay-mesa-detention-center.

## II.

## DISCUSSION

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To meet that showing, Plaintiffs must demonstrate "'[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

**A. Likelihood of Success**

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). While Plaintiffs carry the burden of demonstrating likelihood of success, they are not required to prove their case in full at this stage but only such portions that enable them to obtain the injunctive relief they seek. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Defendants contend Plaintiffs are not likely to succeed on the merits because the PLRA precludes this Court from issuing the relief they seek. Specifically, Defendants argue Plaintiffs are challenging the conditions of their confinement—not the fact or duration of their detention—and seeking release of prisoners. As characterized, Defendants argue the PLRA would apply and preclude the requested relief—as an order requiring release of prisoners may not be entered except by a three-judge panel of the district court and only after other less intrusive orders have failed to remedy the deprivation

of the federal right at issue. Plaintiffs argue habeas is the proper vehicle for the relief they seek and the PLRA does not apply to habeas proceedings.

Plaintiffs' argument that the PLRA does not apply to habeas proceedings is partially correct. By its terms, the PLRA does not apply to habeas proceedings "challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2). The question in this case, therefore, is whether the claims alleged challenge the fact or duration of Plaintiffs' confinement or the conditions of Plaintiffs' confinement. Simply invoking the habeas label is not determinative, as plaintiffs may challenge either kind of claim—"fact or duration of confinement" or conditions of confinement—in a habeas proceeding. *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1862-63 (2017) (leaving open the question whether detainees "might be able to challenge their confinement conditions via a petition for writ of habeas corpus.")

Given Plaintiffs' allegations, the Court finds Plaintiffs' claims rest entirely on the conditions of the Otay Mesa facility. In the first paragraph of their Complaint, Plaintiffs "challenge their continued detention, and the detention of all similarly situated individuals, under *conditions of confinement* that imperil their lives in violation of the Fifth and Eighth Amendments to the U.S. Constitution . . . ." (Compl. ¶ 1 (emphasis added)). Plaintiffs' factual allegations focus exclusively on Defendants' "actions and inactions" concerning the "conditions of confinement" at Otay Mesa. (*Id.* at ¶¶ 98, 100). For example, Plaintiffs discuss the "[c]leaning standards in OMDC common areas," the scarcity of cleaning supplies and hygiene products, USMS's failure to implement CDC guidelines on preventive measures, Otay Mesa's failure to conduct widespread testing, a lack of masks and gloves, and the absence of appropriate social distancing and quarantining measures. (*Id.* at ¶¶ 10, 44, 55, 61, 62, 63, 64; *see also id.* at ¶ 109 ("Defendants have failed to take reasonable measures to abate the risk that the [subject class members] will contract COVID-19.")). Plaintiffs note that the facility's "conditions and population levels" place the proposed class members at "a high risk of exposure" to the virus. (*Id.* at ¶ 72). For relief, Plaintiffs seek release of "as many incarcerated persons as necessary to allow [for] proper social distancing among those remaining in OMDC." (*Id.* at ¶ 11; *see also id.* at ¶

12 (Plaintiffs "further request various improvements to, and ongoing monitoring of, detention conditions at OMDC, and the staggered release of remaining [Plaintiffs] and other class members until necessary social distancing hygiene measures can be sustained.")).

Plaintiffs' claims, under any good faith calculus, cannot be characterized as a "habeas corpus proceeding[] challenging the fact or duration of confinement in prison." 18 U.S.C. § 3626(g)(2). Plaintiffs do not challenge the reason for their confinement, their conviction or charge, the length of their sentence, or a release determination based on good time credits—claims that are often characterized as "the core of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). Rather, their claims are based solely on the current conditions inside OMDC given the COVID-19 pandemic. In other words, unlike a claim concerning the fact of confinement, Plaintiffs' claims would not exist *but for* their current conditions of confinement at Otay Mesa. Accordingly, the present case is not a "habeas corpus proceeding[] challenging the fact or duration of confinement in prison[,]" which would fall outside the purview of the PLRA. It is a habeas claim based on confinement conditions.

Plaintiffs argue they seek release, which is a remedy traditionally provided by a writ of habeas corpus. But this argument conflates the nature of relief with the substance of the claim to avoid the limitations of the PLRA. Moreover, the PLRA specifically contemplates "prisoner release orders" in "civil action[s]" concerning "prison conditions." 18 U.S.C. § 3626(a)(3)(A). The PLRA clearly addresses both Plaintiffs' claim and their chosen remedy. *See Money v. Pritzker,* --- F. Supp. 3d ----, 2020 WL 1820660, at *14 (N.D. Ill. Apr. 10, 2020) (stating PLRA "prevents" court from granting release of inmates based on prison conditions and COVID-19); *Plata v. Newsom,* --- F. Supp. 3d ----, 2020 WL 1908776, at * 1 (N.D. Cal. Apr. 17, 2020) (similar).

During oral argument, Plaintiffs cited a recent Sixth Circuit case, *Wilson v. Williams*, No. 20-3447 (6th Cir. May 4, 2020), in support of their argument that the PLRA does not apply. In *Wilson*, federal inmates filed a petition for a writ of habeas corpus, seeking

6

release from or enlargement of their custody to limit their exposure to the COVID-19 virus. *Wilson*, No. 20-3447.  The Sixth Circuit found the inmates' claims concerned the fact of their detention, not the conditions of their confinement, because the inmates argued "no set of conditions would be constitutionally sufficient." *Id.*  Consequently, the court found the PLRA's restrictions on the issuance of prisoner release orders did not apply.

The Court does not find *Wilson* persuasive for two reasons.  First, unlike the inmates in *Wilson*, Plaintiffs fail to argue there are no set of conditions of confinement that would be constitutionally sufficient.  Although Plaintiffs presented this argument at the hearing on the present motion, it is not included in their Complaint or their motion for TRO.  At most, Plaintiffs argue it would be "structurally impossible" for OMDC detainees to socially distance.  (Mot. for TRO at 11; Compl. ¶ 71 (alleging "practically impossible" to protect detainees)).  But in their Complaint, Plaintiffs allege that a significant reduction in the population of inmates would "allow [for] proper social distancing."  (Compl. ¶ 11).  The reasoning in *Wilson*, therefore, is inapplicable here.

Second, the Court disagrees with the proposition that there are no set of conditions at Otay Mesa that would be constitutionally sufficient under the Fifth Amendment.  As Plaintiffs allege in their Complaint, a significant reduction in population, an increase in sanitation, and compliance with CDC guidelines for detention facilities would eliminate considerable risk of Otay Mesa inmates contracting COVID-19.  (*Id*. at ¶¶ 11, 12).  And, of course, that is so.  The Fifth Amendment prohibits punishment of detained persons prior to "a formal adjudication of guilt" but cannot require a complete elimination of all risk of contracting the virus.  *Bell v. Wolfish*, 441 U.W. 520, 535 n.16 (1979) (citing *United States v. Lovett*, 328 U.S. 303, 317–18 (1946)).  Holding otherwise would place an impossible burden on detention facilities.

Contrary to Plaintiffs' assertion, this Court finds the present case clearly presents a challenge to the conditions of Plaintiffs' confinement at OMDC.  As such, the PLRA applies.  *See* 18 U.S.C. § 3626(a)(3)(A) (stating PLRA applies to "any civil action in federal court with respect to prison conditions"); *Nettles v. Grounds*, 830 F.3d 922, 934 (9th Cir.

2016) (stating prisoner must comply with PLRA if claim challenges any "aspect of prison life" other than "fact or duration of the conviction or sentence").

Congress enacted the PLRA to "revive the hands-off doctrine" and restore "judicial quiescence derived from federalism and separation of powers concerns" to remove the judiciary from prison management. *Gilmore v. California,* 220 F.3d 987, 991, 996–97 (9th Cir. 2000). By its terms, the PLRA "restricts the circumstances in which a court may enter an order 'that has the purpose or effect of reducing or limiting the prison population.'" *Brown v. Plata,* 563 U.S. 493, 511 (2011). As noted by the Supreme Court in *Plata*, "[t]he release of prisoners in large numbers … is a matter of undoubted, grave concern." *Id.* at 501. The PLRA specifically requires courts to give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by" the release of prisoners. 18 U.S.C. § 3626(a)(1).

There is no dispute the PLRA is restrictive. It limits the Court's authority to order release of prisoners "[i]n any civil actions with respect to prison conditions." 18 U.S.C. § 3626(a)(3)(A). It provides, "no court shall enter a prisoner release order unless . . . (i) a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied. . . ; and (ii) the defendant has had a reasonable amount of time to comply with the previous court orders." *Id.* It precludes prisoner release orders unless "entered [] by a three-judge court." *Id.* § 3626(a)(3)(B). In addition, before entering such an order, the three-judge panel must first find, by clear and convincing evidence, "(i) crowding is the primary cause of the violation of a Federal right; and (ii) no other relief will remedy the violation of the Federal right." *Id.* § 3626(a)(3)(E). Finally, the PLRA defines "prisoner release order" in expansive terms to include "any order … that has the purpose or effect of reducing or limiting the prison population, or that directs the release from … a prison." *Id.* § 3626(g)(4). These limitations "ensure that the 'last resort remedy' of a population limit is not imposed 'as a first step.'" *Plata*, 563 U.S. at 514 (quoting *Inmates of Occoquan v. Barry*, 844 F.2d 828, 843 (D.C. Cir. 1988)).

Here, Plaintiffs are challenging confinement conditions and requesting release. The substance of their claim and form of relief fall squarely within the purview of a "prisoner release order" under the PLRA. Because the Court may not grant the requested relief, Plaintiffs have failed to establish a likelihood of success on the merits of their claim.

**B. Remaining Injunctive Relief Factors**

The next three factors require Plaintiffs to demonstrate they are "likely to suffer irreparable harm in the absence of preliminary relief," the "balance of equities tips in [their] favor" and the "public interest favors granting an injunction." *Hernandez*, 872 F.3d at 995, 996 (internal quotations omitted). Given, however, that Plaintiffs have failed to show at "an irreducible minimum that there is a fair chance of success on the merits[,]" the Court cannot enter injunctive relief based on these remaining three factors. *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984). Nevertheless, the Court briefly addresses these factors below.

Turning to likelihood of irreparable injury, recent reports indicate that as of May 5, 2020, 66 criminal detainees in OMDC have tested positive. COVID-19 is highly contagious. (Mot. for TRO at 15). Individuals are capable of spreading the virus, despite being asymptomatic themselves. (*Id.*). Moreover, individuals who are medically vulnerable—including the subclass members seeking relief here—face a heightened risk of serious injury or death upon contracting COVID-19. (*Id.* at 13). None of this is disputed. A strong showing of likelihood of irreparable injury standing alone, however, cannot trigger the issuance of injunctive relief. Without "serious questions" as to the likelihood of success on the merits, the Court cannot issue a TRO. *All for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).[3]

---

[3] The Court also notes that as pretrial and convicted but yet to be sentenced detainees, Plaintiffs have remedies available to them under the Bail Reform Act, (18 U.S.C. §§ 3142 and 3143). Plaintiffs can seek release under appropriate conditions before the judge to whom their case is assigned. Accordingly, Defendants argue Plaintiffs have a legal remedy

Plaintiffs also do not satisfy the remaining two factors of injunctive relief. The Supreme Court has held that where the government is the party opposing an injunction, the balance of the equities and public interest injunctive relief factors tend to merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, the Court could not issue injunctive relief without unfairly intruding on Defendants' operation of the prison system and defying Congress's clear policy determinations regarding challenges to prison conditions and prisoner release orders. In addition, the public interest does not favor the immediate release of a class of inmates who may lack viable housing outside of OMDC and may be deprived of access to food, means of personal hygiene, and medical care if released, all at once, from the facility. Plaintiffs have failed to meet their burden of demonstrating the injunctive relief factors weigh in favor of granting a TRO.[4]

### III.
### CONCLUSION AND ORDER

For these reasons, Plaintiffs' motion for temporary restraining order is denied.

**IT IS SO ORDERED**.

Dated: May 9, 2020

Hon. Dana M. Sabraw
United States District Judge

---

and have not suffered irreparable harm. The Court defers ruling on this factor pending further briefing on preliminary injunction.

[4] Plaintiffs have alleged alternative relief in the form of enlargement, "in which an individual remains in custody, but the place of custody is enlarged by the Court." (*See* Comp. ¶ 81.) That relief was not requested in the TRO. The Court therefore defers ruling on that issue pending briefing on preliminary injunction.