# EXHIBIT A

**JOAN MCPHEE\*** (NY SBN 2082246) (joan.mcphee@ropesgray.com)
**ALEXANDER B. SIMKIN\*** (NY SBN 4463691) (alexander.simkin@ropesgray.com)
**HELEN GUGEL\*** (NY SBN 4910105) (helen.gugel@ropesgray.com)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000

**NICOLE HOROWITZ** (SBN 306828) (nicole.horowitz@ropesgray.com)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 315-6300

Counsel for Plaintiff-Petitioners
*Additional Counsel Listed on Following Page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jacinto Victor ALVAREZ, Joseph BRODERICK, Marlene CANO, Jose CRESPO-VENEGAS, Noe GONZALEZ-SOTO, Victor LARA-SOTO, Racquel RAMCHARAN, George RIDLEY, Michael Jamil SMITH, Leopoldo SZURGOT, Jane DOE, on behalf of themselves and those similarly situated. | Case No.  3:20-cv-00782-DMS-AHG |
| Plaintiff-Petitioners, | **SUPPLEMENTAL DECLARATION OF ROBERT L. COHEN, M.D.** |
| v. | Hon. Dana M. Sabraw |
| Christopher J. LAROSE, Senior Warden, Otay Mesa Detention Center, | |
| Steven C. STAFFORD, United States Marshal for the Southern District of California, | |
| Donald W. WASHINGTON, Director of the United States Marshal Service. | |
| Defendants-Respondents. | |

**SIRINE SHEBAYA*** (NY SBN 5094990) (sirine@nipnlg.org)
**MATTHEW VOGEL*** (LA SBN 35363) (matt@nipnlg.org)
**NATIONAL IMMIGRATION PROJECT**
**OF THE NATIONAL LAWYERS GUILD**
2201 Wisconsin Ave, NW, Suite 200
Washington, DC 20007
Telephone: (617) 227-9727

**MITRA EBADOLAHI** (SBN 275157) (mebadolahi@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783) (bvakili@aclusandiego.org)
**SARAH THOMPSON** (SBN 323188) (sthompson@aclusandiego.org)
**DAVID LOY** (SBN 229235) (davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &**
**IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187

**GABRIEL ARKLES**** (NY SBN 4391918) (garkles@aclu.org)
**CLARA SPERA*** (NY SBN 5590229) (cspera@aclu.org)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569


*Admitted *pro hac vice*
**Application for admission *pro hac vice* forthcoming

## <u>DECLARATION OF ROBERT L. COHEN, M.D.</u>

I, Robert L. Cohen, declare as follows:

## I. <u>Summary of Qualifications</u>

1.      I am a board-certified medical doctor in the field of internal medicine and expert in the field of Correctional Medicine. My Curriculum Vitae is attached to this Report. I have 35 years of experience in correctional medicine.  I have served as a federal and state court-appointed monitor in cases regarding the provision of medical care in prisons and jails in Washington, D.C., Philadelphia, Michigan, New York, Ohio, Connecticut, and Florida.

2.      I served as a member of the Board of the National Commission on Correctional Health Care for seventeen years, representing the American Public Health Association. I have served as an appointed member of the New York City Board of Corrections since 2009. The Board of Correction is a nine-member independent board which oversees the New York City Department of Correction and has rule making authority.

3.      As Director of the Montefiore Medical Center for Rikers Island Health Services, I supervised and was responsible for the provision of medical and mental health services for more than 13,000 prisoners in the New York City jails, and oversaw a medical staff of approximately 500 physicians, mid-level practitioners, registered nurses, licensed practical nurses, psychiatrists, psychologists, social workers, pharmacists, laboratory technicians, administrative and clerical staff. I have published extensively on health care in corrections settings.

4.      I served as the Vice President for Medical Operations of the New York City Health and Hospitals Corporation, reporting directly to the President with responsibility for clinical services, including nursing, physician care, ambulatory care, and quality assurance for

New York City's eleven hospital public health care system. I served as Director of the AIDS

Center of St. Vincent's Hospital, located in Greenwich Village, New York.

5.      During the past four years I have given testimony in the following matters:

- Graves v. Arpaio, 2:77-cv-00479-PHX-NVW
- Parsons v. Ryan, CV-12-0601-PHX-DKD
- Hadix v. Caruso, U.S. District Court, Western District of Michigan, Ass. Monitor
- Milburn v. Coughlin, 79 Civ. 5077, Court appointed Medical Auditor
- Doe v. Meachum, Civil No. H-88-562(PCD), (JGM) Court Appointed Agreement Monitoring Panel
- Luann Gillespie Shultz vs. Allegheny County, U.S. District Court, Western District of Pennsylvania, 2:10-cv-01530
- Loretta Lopez, as Administratrix of the Estate of Vallia Valene Karaharisis, v. Bucks County, et al.
- Dorothy F. Gardner v. USA, Case No. 1:15-cv-02874-JKB
- Cassandra Salcido v. Harris County, No. 4:15-cv-02155
- Hunter v. Sood, No. 13-cv-2569, U.S. District Court, Northern District of Illinois
- Keith Dahl v. Mason County, No. 3:16-cv-05719, U.S. District Court, Western District of Washington
- Herring, Jr. William v. Armor Correctional Health Services, 0:16-cv-62950-WJZ, U.S. District Court, Southern District of Florida (Ft. Lauderdale)
- Matysik v. County of Santa Clara CASE NO. 5:16-CV-06223-LHK (HRL), U.S. District Court, Northern District of California
- Rosemary Obremski v. Armor Correctional Health Services, 18-cv-61798-UU, U.S. District Court, Southern District of Florida (Ft. Lauderdale)

6.      I have been retained by Plaintiffs-Petitioners in Alvarez v. LaRose.

7.      I am not receiving any fees for my expert consultation in this matter.

8.      I previously submitted a declaration in this case to address the particular risks of

COVID-19 infection in congregate settings; whether a facility operating at one-third capacity has

adequately reduced the risk of COVID-19; the age at which people have increased risk of severe

illness or death from COVID-19; and whether incarcerated people living with HIV are

particularly vulnerable to COVID-19.

9.      I submit this supplemental declaration to set forth my opinion concerning the safest course of action for protecting medically vulnerable detained individuals, and on the risks to public health in the surrounding community of outbreaks at detention facilities like Otay Mesa.

10.      I relied on my scientific education and training, my clinical experience, my knowledge of the scientific literature in the pertinent fields, and the sources cited in the declaration in reaching my opinion.

## II. Managing Risks of COVID-19 to Medically Vulnerable People in Correctional Settings

11.      As I explained in my previous declaration submitted in this case, the risks of COVID-19 in correctional settings are particularly severe because social distancing is typically impossible. Thus, COVID-19 spreads to more people more quickly.

12.      The fact that a correctional facility is operating at less than full capacity does not automatically mean that social distancing is possible. Some of the factors that typically prevent social distancing in correctional settings—notwithstanding less than full capacity—include officers conducting pat downs; prisoners sharing restroom facilities, telephones, and other communal amenities; prisoners distributing food and laundry to other prisoners; prisoners being required to stand near each other and near to staff during counts, meal time, recreation time, or town hall meetings; and prisoners being housed in close quarters to one another. All these factors may still be present in a facility even if it is operating at only one third capacity.

13.      Otay Mesa appears to still be in the midst of a COVID-19 outbreak. To ensure the safety and well-being of medically vulnerable people in a facility with an active COVID-19 outbreak, the best approach remains  to remove all medically vulnerable individuals from the congregate environment. This is particularly important if there is any doubt as to whether all

medically vulnerable individuals have been properly identified, and if universal testing for all

staff and detained individuals has not been implemented.[1]

       14.      Mitigating the risk for those who are medically vulnerable in detention facilities is

also extremely important for the public safety of the surrounding community. It is my

understanding that over seventy individuals in U.S. Marshals Service custody at Otay Mesa have

tested positive for COVID-19 to date. The high number of COVID-19 cases at the facility

threatens to overwhelm surrounding health care providers. As of May 29, 2020, the County of

San Diego had recorded 676 COVID-19 cases in the 92154 zip code (where the Otay Mesa

Detention Center is located); this area has the highest recorded rate of infection per 100,000

individuals.[2] The two closest surrounding zip codes—92173 to the south and 91911 to the

north—also have very high rates of infection per 100,000 individuals.[3] Even if Otay Mesa

promptly transported everyone who required hospitalization to local hospitals for treatment (as it

should), those hospitals could quickly become overwhelmed, leading to shortages of critical

healthcare both for people from the facility and for people in the community. This risk is

heightened when medically vulnerable people remain detained at Otay Mesa, as those

individuals are more likely to need hospitalization or other specialized medical care if they

---

[1] *Interim Testing Guidance on Response to Suspected or Confirmed COVID-19 in Nursing Home Residents and Healthcare Personnel*, Ctrs. for Disease Control and Prevention (Mar. 19, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf (recommending testing all residents and staff if there is a new confirmed case of COVID-19 and continuing to repeat testing as long as the disease persists); Memorandum from Dr. Siiri Bennett, *State Epidemiologist on Universal Testing in Congregate Living Settings to All Health Care*, Dep't of Health and Hum. Servs., at 1 (May 23, 2020), https://www.maine.gov/dhhs/mecdc/health-advisory.shtml?id=2577694 (recommending universal testing in congregate living settings such as correctional facilities where a single, confirmed case of COVID-19 is detected among staff or residents).

[2] *See* County of San Diego, Daily Coronavirus Disease 2019  (COVID-19), Summary of Cases by Zip Code of Residence, https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/COVID-19%20Summary%20of%20Cases%20by%20Zip%20Code.pdf, accessed May 31, 2020.

[3] *Id.*

contract COVID-19 during this outbreak, and are therefore more likely to require significant expenditure of resources from the surrounding community should they become ill.

15.      For all these reasons, it is my professional opinion that those who are medically vulnerable should be removed from Otay Mesa for the duration of the outbreak, until universal testing shows that there are no new COVID-19 cases at the facility.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 31, 2020 in New York City, New York.

Robert L. Cohen, M.D.