1   **JOAN MCPHEE*** (NY SBN 2082246) (joan.mcphee@ropesgray.com)
    **ALEXANDER B. SIMKIN*** (NY SBN 4463691) (alexander.simkin@ropesgray.com)
2   **HELEN GUGEL*** (NY SBN 4910105) (helen.gugel@ropesgray.com)
    **ROPES & GRAY LLP**
3   1211 Avenue of the Americas
    New York, NY 10036-8704
4   Telephone: (212) 596-9000

5   **NICOLE HOROWITZ** (SBN 306828) (nicole.horowitz@ropesgray.com)
    **ROPES & GRAY LLP**
6   Three Embarcadero Center
    San Francisco, CA 94111
7   Telephone: (415) 315-6300

8   Counsel for Plaintiff-Petitioners
    *Additional counsel listed on following page*

9
## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  Jacinto Victor ALVAREZ, Joseph BRODERICK, Marlene CANO, Jose CRESPO-VENEGAS, Noe GONZALEZ-SOTO, Victor LARA-SOTO, Racquel RAMCHARAN, George RIDLEY, Michael Jamil SMITH, Leopoldo SZURGOT, Jane DOE, on behalf of themselves and those similarly situated, | Case No. 3:20-cv-00782-DMS-AHG  **JOINT MOTION FOR DETERMINATION OF RULE 34 SITE INSPECTION DISCOVERY DISPUTE** |

16                     Plaintiff-Petitioners,

17          v.                                      Hon. Allison H. Goddard

18   Christopher J. LAROSE, Senior
     Warden, Otay Mesa Detention Center,
19
     Steven C. STAFFORD, United States
20   Marshal for the Southern District of
     California,
21
     Donald W. WASHINGTON, Director
22   of the United States Marshals Service.

23                     Defendant-Respondents.

24
25
26          The parties hereby submit the following Joint Motion for Determination of
     Rule 34 Site Inspection Discovery Dispute.
27
28

**SIRINE SHEBAYA**\* (NY SBN 5094990) (sirine@nipnlg.org)
**MATTHEW VOGEL**\* (LA SBN 35363) (matt@nipnlg.org)
**NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS GUILD**
2201 Wisconsin Ave, NW, Suite 200
Washington, DC 20007
Telephone: (202) 656-4788

**MITRA EBADOLAHI** (SBN 275157) (mebadolahi@aclusandiego.org)
**BARDIS VAKILI** (SBN 247783) (bvakili@aclusandiego.org)
**SARAH THOMPSON** (SBN 323188) (sthompson@aclusandiego.org)
**DAVID LOY** (SBN 229235) (davidloy@aclusandiego.org)
**ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES**
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187

**Z. GABRIEL ARKLES**\*\* (NY SBN 4391918) (garkles@aclu.org)
**CLARA SPERA**\* (NY SBN 5590229) (cspera@aclu.org)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569

\*Admitted *pro hac vice*
\*\*Application for admission *pro hac vice* forthcoming

Additional Counsel for Plaintiff-Petitioners


ROBERT S. BREWER, JR.
United States Attorney
BRETT NORRIS, Calif. Bar No. 224875
Deputy Chief, Civil Division
PAUL STARITA, Calif. Bar No. 219573
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7620 / 619-546-7751 (fax)
brett.norris@usdoj.gov
douglas.keehn@usdoj.gov, paul.starita@usdoj.gov

ATTORNEYS FOR RESPONDENTS, Donald T. Washington, Director, United
States Marshals Service and Steven C. Stafford, United States Marshal for the
Southern District of California,

# **PLAINTIFFS' POSITION**

## I.    Introduction

This Court previously noted that Plaintiff-Petitioners' ("Plaintiffs") "allegations and declarations raise important concerns that must be continually addressed by Defendants." ECF No. 81 at 12. Yet recent reports from detained persons at Otay Mesa Detention Center ("Otay Mesa") raise serious questions about Defendant-Respondents' ("Defendants") compliance with applicable Centers for Disease Control and Prevention ("CDC") guidelines. *See, e.g.*, Castagne Decl. ¶ 4 (Ex. A); Reynolds Decl. ¶ 7 (Ex. B); Broderick Suppl. Decl. ¶ 3 (Ex. C). Defendants have also confirmed that they have resumed transferring people into Otay Mesa, and that at least ten individuals recently transferred into the facility tested positive for COVID-19. Johnson Decl. ¶¶ 5–6, submitted herewith.

Plaintiffs seek to have a correctional healthcare expert conduct an on-site inspection pursuant to Federal Rule of Civil Procedure 34(a) so they can meaningfully assess Otay Mesa's compliance with CDC guidelines designed to minimize the spread of COVID-19. As detailed in the Proposed Order, such inspection would include an inspection of all areas of the Otay Mesa facility, and discussions with staff and persons detained in United States Marshals Service ("USMS") custody.

Based on the information obtained through this narrowly-tailored discovery, Plaintiffs will determine whether it is appropriate to file a motion for a preliminary injunction seeking specific conditions reforms necessary to bring Otay Mesa into compliance with CDC guidelines and constitutional guarantees, or seek other appropriate relief from this Court. Defendants' argument that there are not many known cases currently at Otay Mesa is a red herring—the issue is the facility's compliance with CDC guidelines to mitigate risk to the people inside. It is imperative that this inspection happen *before* another major outbreak at Otay Mesa because, once another active outbreak starts, it will be too late for many potential

preventative measures to be effective.[1] This approach is consistent with that ordered by courts around the country. *See* Sec. III.C, *infra*. Plaintiffs' request is particularly pressing in light of recent CDC guidance stating that people who previously tested positive for COVID-19 can be re-infected after three months.[2]

## II.     Factual Background

Otay Mesa is a private minimum/medium-security detention center run by CoreCivic. Plaintiffs are USMS detained persons at Otay Mesa who filed a class complaint for injunctive and declaratory relief on behalf of themselves and similarly situated detained individuals seeking (i) habeas relief in the form of release of the medically vulnerable, as well as (ii) reasonable mitigation efforts— *i.e.*, conditions reforms—for those left behind in light of the COVID-19 pandemic. While the Court held that Plaintiffs are not likely to succeed on their habeas claim for release, contrary to Defendants' argument, it did not even suggest, let alone hold, that it has "no authority" to issue an appropriate injunction as to Plaintiffs' conditions claims. ECF No. 81.[3]

Defendants have asserted that they are trying to mitigate the spread and harm of COVID-19 and that they are working to try to make Otay Mesa compliant with CDC guidelines. ECF No. 71 at 4, 9. However, persons held within the facility attest to a starkly different reality. *See* ECF No. 77 at 8.[4] Notably, Defendants have

---

[1] Defendants' argument that CDC compliance is conclusively proven by the number of positive COVID tests is frivolous.  It is akin to arguing that a building is necessarily compliant with the fire code because there is not currently a fire.

[2] *See* CDC, *When to Quarantine*, https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last updated Aug. 16, 2020) (recommending quarantine and other precautionary measures for all but individuals who tested positive for COVID-19 within the past three months).

[3] Indeed: this Court ordered Defendants to release <u>all</u> individuals in U.S. Immigration and Customs Enforcement ("ICE") custody at Otay Mesa who are 60 or over or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19, as determined by CDC guidelines. *See* Order, *Alcantara v. Archambeault* ("ICE Case"), No. 3:20-cv-00756-DMS-AHG (S.D. Cal. Apr. 30, 2020), ECF No. 38.

[4] *See also* Castagne Decl. ¶¶ 8, 9–10; Broderick Suppl. Decl. ¶ 7.

---

apparently resumed admitting new arrestees and shuffling detained persons in and out of the facility. *See* Castagne Decl. ¶¶ 3, 4; Reynolds Decl. ¶ 7; Broderick Suppl. Decl. ¶ 3; Johnson Decl. ¶ 6. This contravenes CDC guidelines, which recommend "[s]uspend[ing] all transfers of incarcerated/detained persons to and from other jurisdictions and facilities . . . unless necessary for medical evaluation, medical isolation/quarantine, health care, extenuating security concerns, release, or to prevent overcrowding."[5] *Cf.* Broderick Suppl. Decl. ¶ 3 ("We are currently at full capacity in V-pod, with 128 people in total. I think the number of people in V-pod has more or less doubled in the last two weeks. There was a point a couple months ago when there were only about 50 people in here, but now the numbers have gone way back up."); Reynolds Decl. ¶ 7; LaRose Supp. Decl. ¶¶ 16, 71.

Further, according to multiple people with first-hand knowledge of the current conditions, Otay Mesa fails to comply with the most basic CDC standards. Defendants have failed, for example, to ensure consistent social distancing or access to clean face masks, and instead ask detained persons to reuse disposable masks for days.[6] In direct contradiction to CDC recommendations on social distancing, it appears that Defendants also continue to expose detained persons to large gatherings, including town hall meetings, meal service, and within shared cells. Broderick Suppl. Decl. ¶ 4 ("It is completely impossible to socially distance in the dayroom. We eat on tables and chairs that are bolted to the floor, in close proximity."); Castagne Decl. ¶ 14; Reynolds Decl. ¶ 7.

---

[5] CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention [hereinafter "CDC Interim Detention Facility Guidance"], https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated July 22, 2020).

[6] Broderick Suppl. Decl. ¶ 4 ("When the staff brings meals, we all have to line up to get them, standing shoulder-to-shoulder . . . . The staff makes no efforts to enforce social distancing, but probably because it would be impossible."); Reynolds Decl. ¶ 11 ("I've been given disposable, single-use masks but only about three times since I've been here even though I've asked for additional masks several times."); Castagne Decl. ¶¶ 11, 14.

Detained persons are also reporting that Defendants are not providing appropriate personal protective equipment ("PPE"). Detained persons handling laundry or used food service items from someone with COVID-19 have not been provided with the CDC-recommended gloves and gowns/coveralls, Reynolds Decl. ¶¶ 10–12; Broderick Suppl. Decl. ¶¶ 8–9, and multiple witnesses dispute Defendants' claim that staff members wear face masks, eye protection, and gloves when entering certain pods, Castagne Decl. ¶ 12; Reynolds Decl. ¶ 13; Broderick Suppl. Decl. ¶ 12; *cf.* LaRose Supp. Decl. ¶¶ 46, 56, 117.

With respect to monitoring, CDC guidance recommends daily temperature checks within housing units with positive COVID-19 cases. *See supra*, n. 5. Defendants appear to acknowledge that they only regularly conduct staff and visitor temperature checks for those entering the facility. LaRose Supp. Decl. ¶¶ 55, 138, 139. Multiple detained persons report that temperature-taking in housing units where COVID-19 has been identified has been haphazard and, recently, has halted entirely. Castagne Decl. ¶ 11; Reynolds Decl. ¶ 6. The same goes for the Defendants' testing regimen, which declarations suggest is inconsistent at best, thus bringing into question whether the number of reported cases can be relied upon. *See, e.g.*, Castagne Decl. ¶¶ 4, 9, 10; Broderick Supp. Decl. ¶ 7.[7]

Moreover, there is a strong indication that Defendants' quarantining procedures remain non-compliant. The CDC recommends that detention facilities "isolate individuals with suspected COVID-19 (individually – do not cohort)."[8]

---

[7] Likewise, Defendants' representations cannot necessarily be relied on. For example, in the parallel ICE case, Warden LaRose initially reported to the Court that only 8 detained persons qualified as "medically vulnerable." Defendants later admitted that there were actually somewhere between 51 and 69 such people. *See* ICE Case, ECF No. 35. Concerns about accurate information are particularly heightened here since USMS does not directly run Otay Mesa and instead relies on CoreCivic to do so on its behalf. Defendants' declarations also appear to be artfully worded; for example, they do not disclose *where* new admittees are purportedly being "quarantined/observed" (and who they are being "quarantined/observed" with). LaRose Supp. Decl. ¶ 64.

[8] CDC Interim Detention Facility Guidance. *Compare* Castagne Decl. ¶¶ 9, 10 (explaining that she was moved into general population approximately three days

However, detained persons report that symptomatic individuals are not placed under immediate medical isolation at Otay Mesa and those who report symptoms are often ignored. *See* Castagne Decl. ¶ 10. Even those individuals who test positive and are placed in medical isolation report being moved back into the general population before they have recovered. *Id.* The fact that at least ten individuals recently transferred into Otay Mesa have already tested COVID-19 positive only underscores the threat to Plaintiffs. Johnson Decl. ¶ 5.

## III.   Plaintiffs' Argument

Federal Rule of Civil Procedure 26(d)(1) permits discovery prior to a Rule 26(f) conference "when authorized . . . by stipulation, or by court order." Fed. R. Civ. P. 26(d). Courts in the Ninth Circuit use a "good cause" standard in deciding whether to grant expedited discovery. *See, e.g.*, *Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F. Supp. 3d 1068, 1076 (S.D. Cal. 2019).[9] "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Synopsys, Inc.*, 401 F. Supp. 3d at 1076 (quoting *Semitool, Inc.*, 208 F.R.D. at 276).

Courts consider five factors in deciding whether there is good cause in a particular case: (A) "whether a preliminary injunction is pending"; (B) "the breadth of the discovery requests"; (C) "the purpose for requesting the expedited discovery"; (D) "the burden on the defendants to comply with the requests"; and (E) "how far in advance of the typical discovery process the request was made." *Synopsis, Inc.*, 401 F. Supp. at 1076 (quoting *Am. LegalNet, Inc.*, 673 F. Supp. 2d

---

after testing positive for COVID-19 and without additional testing), *with* Johnson Supp. Decl. ¶ 6 (claiming that COVID-19-positive detained persons are only moved into general population after at least fourteen days having passed since a positive test).

[9] *See also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

---

at 1067) (internal quotation marks omitted). These factors weigh in favor of granting Plaintiffs' request for expedited discovery.[10]

### A. Plaintiffs Seek a Correctional Healthcare Expert Inspection to Assess Whether to Seek a Preliminary Injunction.

Expedited discovery is appropriate in cases "such as those involving requests for a preliminary injunction." Fed. R. Civ. P. 23(d) advisory committee's note to 1993 amendment. Even where a preliminary injunction is not pending, courts have found expedited discovery appropriate where it will "allow a plaintiff to determine whether to seek an early injunction." *NobelBiz, Inc. v. Wesson*, No. 14-cv-0832 W(JLB), 2014 WL 1588715, at *1–2 (S.D. Cal. Apr. 18, 2014) (finding good cause where plaintiff sought expedited discovery "to develop the evidentiary record for an imminent request for a preliminary injunction or temporary restraining order," and that discovery would provide "a measure of clarity to the parties early in the proceeding and facilitating effective case management"); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-cv-0751-GPC (DHB), 2014 WL 12515242, at *2 (S.D. Cal. Nov. 7, 2014) (finding good cause where the defendant sought expedited discovery in part "to determine whether to seek a protective order or injunction" and the request was "relevant to whether an injunction should be sought").[11]

Here, Plaintiffs similarly seek expedited discovery to "determine whether to seek an early injunction" regarding potential conditions reforms at Otay Mesa.

---

[10] The instant motion is clearly relevant to Plaintiffs non-*habeas* conditions claims. Even if the discovery sought were solely relevant to Plaintiffs' habeas claim, it would still be warranted upon the showing of good cause detailed herein. *See Caridad v. Kramer*, No. 214CV1847KJMACP, 2018 WL 4502487, at *2 (E.D. Cal. Sept. 20, 2018) (discovery is warranted in a habeas case "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief.") (quoting *Bracy v. Gramley,* 520 U.S. 899, 908–09 (1997).

[11] *See also Apple Inc. v. Samsung Electronics Co.*, No. 11-cv-01846-LHK, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011) (allowing expedited discovery even where the plaintiff "had not yet filed a motion for preliminary injunction"); *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C 09-05812 JW (PVT), 2010 WL 143665, at *2 (N.D. Cal. Jan. 7, 2010) ("Expedited discovery will allow plaintiff to determine whether to seek an early injunction.").

*NobelBiz, Inc.*, 2014 WL 1588715, at *1. An expert inspection will permit Plaintiffs to evaluate whether emergency relief is necessary and to appropriately tailor requested remedies, or, if the opinions of Plaintiffs' correctional healthcare expert warrant, to forgo seeking a preliminary injunction altogether. Quite simply, a better understanding of the facility's current circumstances is directly relevant to a further assessment of the injunctive and declaratory relief sought in the Complaint—namely, potential conditions reforms necessary to safeguard Plaintiffs' constitutional rights.

### B. The Expedited Discovery Request Is Narrow in Scope.

Expedited discovery may be permissible where it has a "narrow focus," *Sambreel Holdings LLC v. Facebook, Inc.*, No. 12-cv-668-CAB (KSC), 2012 WL 13175902, at *4 (S.D. Cal. June 18, 2012), or even where it is "relatively limited," *Light Salt Investments, LP v. Fisher*, No. 13-cv-1158-MMA (DHB), 2013 WL 3205918, at *2 (S.D. Cal. June 24, 2013). Relatedly, "[c]ourts also consider whether the requested 'expedited discovery would ultimately conserve party and court resources and expedite the litigation.'" *Rose v. Seamless Fin. Corp.*, No. 3:11-cv-00240-AJB (KSC), 2012 WL 6052006, at *2 (S.D. Cal. Dec. 4, 2012) (quoting *Semitool*, 208 F.R.D. at 276).

Plaintiffs' request is narrow in scope—requesting the admission of only two non-employees to conduct a five-hour inspection—and targeted to assess potentially unconstitutional conditions of confinement under the Fifth and/or Eighth Amendments. *See* Petitioners' Proposed Order, submitted herewith, at ¶¶ 2–3. Further, because a correctional healthcare expert will be able to collect and digest significant information based on an in-person visit, this discovery should narrow the need for extensive back-and-forth between the parties that would otherwise be necessary to develop the factual record. Accordingly, Plaintiffs' discovery request is limited and narrow in scope and will "ultimately conserve party and court resources." *Rose*, 2012 WL 6052006, at *2–3.

**C.    Plaintiffs Seek to Access Information Fundamental to Assessing a Potential Motion for Preliminary Injunction.**

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). This includes "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Further, "[r]elevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). The conditions within Otay Mesa are central to Plaintiffs' Fifth and Eighth Amendment arguments. As described within, an accurate understanding of current conditions is the best and perhaps only way to resolve the fundamental factual disputes between the parties regarding these conditions.

Gaining accurate information is particularly difficult for Plaintiffs in this case because Defendants have a near-monopoly over the critical evidence. An inspection is an appropriate means of reducing that imbalance. Defendants' argument that Plaintiffs' declarations cannot be relied on is also all the more reason for the Court to grant the requested site inspection. District courts around the country hearing similar lawsuits by incarcerated individuals have recognized that expert inspections are particularly necessary. *See*, *e.g.*, *Wilson v. Ponce*, No. 20-cv-04451-MWF-MRW, 2020 WL 5118066, at *7 (C.D. Cal. July 14, 2020) (ordering an expert site visit to "inform the Court's determination" on the Plaintiffs' motion for temporary restraining order or preliminary injunction requesting conditions improvements); *Fernandez-Rodriguez v. Licon-Vitale*, No. 20 CIV. 3315 (ER), 2020 WL 2225910 (S.D.N.Y. May 7, 2020) (ordering inspection by Plaintiffs' expert, accompanied by facility escorts, a neutral interpreter, and others, in a suit for injunctive relief, including conditions improvements and release); Inspection Order, *Cameron v.*

*Bouchard*, No. 20-cv-10949 (E.D. Mich. Apr. 22, 2020) (ordering expert to inspect jail and provide report to court in light of plaintiff's request for injunctive relief).[12]

### D.    The Burden on Defendants Is Minimal.

Defendants will not be substantially burdened or suffer prejudice from an order granting Plaintiffs' request because the expedited discovery Plaintiffs seek is limited in scope. Plaintiffs' request for an inspection is materially less burdensome than conducting a document search, responding to interrogatories, or sitting for depositions, all of which courts in this Circuit have found appropriate in similar circumstances.[13] Indeed, Defendants claim to make Otay Mesa available for routine inspections and monitoring, so accommodating Plaintiffs' request will not raise novel or unreasonable hardships.[14] Because Plaintiffs seek to observe how the facility is operating on a daily basis during the pandemic, Defendants' preparations should be particularly limited to allow Plaintiffs' correctional healthcare expert to gain an accurate understanding of the facts on the ground as they normally exist. Plaintiffs, of course, remain willing to meet and confer with Defendants as to the parameters of the proposed inspection to address any potential burden concerns.

Finally, Defendants' previously filed (and improperly noticed) Motion to Deny, ECF No. 31, does not impact the burden on Defendants to accommodate the requested discovery and thus has no bearing on this request for expedited discovery.[15] In any event, Defendants' motion is directed at the *habeas* portion of

---

[12] *See also Chunn v. Edge*, No. 20-CV-1590 (RPK), 2020 WL 1872523 (E.D.N.Y. Apr. 15, 2020) (granting expert inspection in advance of Plaintiffs' motion for a preliminary injunction).

[13] *See NobelBiz, Inc.*, 2014 WL 1588715, at *2–3 (allowing expedited discovery including various requests for production, a deposition, three interrogatories, and a third-party subpoena); *Light Salt Investments*, 2013 WL 3205918, at *2 (allowing the plaintiff to take immediate depositions of two witnesses where the plaintiff represented that it planned to file a motion for preliminary injunction as soon as it completed the two depositions).

[14] *See* Decl. of Chief Deputy United States Marshal Keith Johnson, ¶ 4, ECF No. 71-29 (stating that Otay Mesa is subject to contract compliance inspections, monitoring by USMS, and unannounced USMS inspections since March 2020).

[15] *See* ECF No. 38.

---

Plaintiffs' complaint, which sought to have the most medically vulnerable individuals released from confinement at Otay Mesa.[16] Regardless, a pending motion to dismiss certainly does not result in an automatic total stay of discovery. *See, e.g., Quintero Family Tr. v. Onewest Bank, F.S.B.,* No. 09-cv-1561, 2009 WL 3381804, at *1 (S.D. Cal. Oct. 16, 2009) (granting expedited discovery despite pending motion to dismiss).

E.   **Plaintiffs' Request to Commence Limited Discovery Four Months After Filing the Complaint Is Reasonable Given the Urgent Risk of Irreparable Harm.**

Given the frequency with which COVID-positive individuals are apparently being brought into Otay Mesa, and to ensure that Otay Mesa does not once again become the site of the largest COVID-19 outbreak among all detention centers in the country, commencing discovery in advance of the Rule 26(f) conference in the form of a site inspection is reasonable and appropriate. In *Bona Fide Conglomerate*, the court held that "limited discovery . . . approximately two months prior to the commencement of discovery [was] not too remote in time," based on a finding that the moving party would be prejudiced if it was required to wait until discovery opened to obtain the relevant information, while the non-moving party would be unharmed by the expedited schedule. 2014 WL 12515242, at *2. Here, but for their Motion to Deny, Defendants would have been obligated to file an answer over two months ago and the parties may well have already commenced discovery. ECF No. 38. Plaintiffs thus do not request discovery far in advance of the normal course. Further, Defendants will face no prejudice if the Court grants Plaintiffs' request while Plaintiffs face urgent and dire consequences if counsel is unable to access appropriate evidence regarding the ongoing constitutional violations at Otay Mesa.

---

[16] The Court implicitly rejected Defendants' Motion to Deny by ruling on Plaintiffs' preliminary injunction request on the merits (which decision is now on appeal to the Ninth Circuit). Notice of Appeal, ECF No. 82.

**RESPONDENTS' POSITION**

Respondents, Donald W. Washington, Director, United States Marshals Service ("USMS"), and Steven C. Stafford, United States Marshal for the Southern District of California, raise the following issues in opposition to Petitioners' motion for expedited discovery:

1.      In May, the District Court denied Petitioners' motion for a temporary restraining order because the Prisoner Litigation Reform Act ("PLRA") "divest[s] the Court of authority to grant the requested relief."[17]  And in June, the District Court denied Petitioners' motion for a preliminary injunction, again because the PLRA "restricts the Court's ability to order the relief [Petitioners] seek."[18]  Now, Petitioners demand expedited discovery so that they can "determine whether it is appropriate to file a motion for [another] preliminary injunction . . . ."[19]  Should this Court allow Petitioners to conduct discovery on the need for an injunction when the District Court has already ruled – not once, but twice – that it has no authority to issue an injunction?

2.      Petitioners claim they need expedited discovery "in light of the continued COVID-related crisis" at the Otay Mesa Detention Center ("OMDC").[20]  But Petitioners provide no evidence of any such crisis.  And that is because there is none.  In fact, not a single USMS detainee has contracted COVID-19 at OMDC since May 28, 2020.[21]  With zero infections in more than three months, is there really a "crisis" that warrants judicial intervention and expedited discovery?

3.      The Supreme Court holds that habeas petitioners are not entitled to discovery as a matter of course.[22]  And the Ninth Circuit instructs that "courts should not allow [habeas petitioners] to use . . . discovery for fishing expeditions to investigate mere speculation."[23]  Here, Petitioners demand discovery "*before* another major [COVID-19] outbreak at Otay Mesa" occurs.[24]  But no one has contracted COVID-19 at OMDC in over three months. Are Petitioners attempting to investigate mere speculation?

---

[17] *Id.* at p. 9:1-4.  *See also* ECF 81 at p. 1:27-28.

[18] ECF 81 at p. 2:13-15.

[19] Petitioners' motion at p. 1:21-22.  *See also* Exhibit 1 to accompanying Declaration of Brett Norris, August 24, 2020 email from Petitioners' counsel to Respondents' counsel requesting an inspection of OMDC.

[20] *Id.*

[21] *See* accompanying declaration of Keith Johnson ("Johnson Dec.") at ¶ 4.

[22] *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

[23] *Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996).

[24] Petitioners' motion at p. 1:27.  (Italics in original.)

---

1 | **I.    FACTS**

2 |     **A.    Petitioners**

3 |         Petitioners are "Pretrial and Post-Conviction" federal criminal detainees at
4 OMDC.[25]  They are not immigration detainees.[26] They seek release from OMDC as
5 a result of the COVID-19 outbreak. Of the 11 Petitioners who initiated this action,
6 only three – Jacinto Victor Alvarez, Joseph Broderick, and George Ridley – remain
7 at OMDC.[27] The other eight have been released from custody or transferred to other
8 facilities.[28]

9         Mr. Alvarez is charged with attempted unlawful entry by an alien.[29] Mr.
10 Broderick is charged with wire fraud, conspiracy to commit wire fraud, and criminal
11 forfeiture.[30] And George Ridley is charged with attempted sex trafficking of
12 children.[31] Mr. Alvarez and Mr. Broderick were ordered detained as flight risks.
13 Mr. Ridley was ordered detained as both a flight risk and a danger to the
14 community.

15

16 _____

17 [25] ECF 2 at p. 3:7-19.
18 [26] This fact is critical.  In footnote 3 above, Petitioners argue that the District Court's
issuance of an injunction in an immigration detainee case (*Alcantara,* No. 20-cv-
19 756-DMS-AHG) proves that it can issue an injunction here.  But it cannot.  And the
District Court has confirmed this, writing that the criminal detainees here are in "an
20 entirely different position from those [immigration detainees] in *Alcantara*, as
Congress, through the Prison Litigation Reform Act ("PLRA"), has imposed
21 significant limitations on court intervention in matters that are traditionally within
the discretion of the Executive Branch and its prisons." ECF 46 at p. 2:9-12.  Thus,
22 the District Court ruled that, unlike *Alcantara*, it cannot issue an injunction here.
ECF 46 at p. 2:14-16.
23 [27] Johnson Dec. at ¶ 12.
24 [28] *Id*. When they met and conferred on August 31, 2020, Respondents' counsel
asked Petitioners' counsel to dismiss the Petitioners who are no longer detained at
25 OMDC, but Petitioners' counsel declined.  *See* Norris Dec. at ¶ 3.
26 [29] *See* Case No. 19-cr-05093-LAB (related case 19-cr-4869)
[30] *See* Case No. 19-cr-04780-GPC.
27 [31] *See* Case No. 19-cr-04905-DMS.
28

**B.    COVID-19 and OMDC**

In February, Respondents implemented extensive measures to prevent the spread of COVID-19 at OMDC.[32] Among other actions, the USMS stopped housing new prisoners at OMDC and, by late May, it had reduced its prisoner population there by over 51.4%, from 537 to 261.[33]  These efforts succeeded. By May 28, 2020, there were zero cases of COVID-19 among the USMS's detainees at OMDC.[34]

On June 9, 2020, the USMS resumed housing new prisoners at OMDC.[35] But in advance of that change, the USMS adopted new admission standards to prevent the re-introduction of COVID-19 at OMDC. These new standards, which are still in effect, require:

1. That all new prisoners be tested for COVID-19 during intake;

2. That all prisoners who test negative be quarantined for 14 days;

3. That all prisoners who test positive be isolated in the medical unit – away from the general population – until they meet the following recovery standards:

   a. At least 3 days (72 hours) have passed since recovery, which is defined as: (i) resolution of fever without the use of fever-reducing mediations; and (ii) improvement in respiratory symptoms (e.g., cough, shortness of breath); AND

   b. At least 7 days have passed since the symptoms first appeared; AND

   c. A minimum of 14 days have passed since the first specimen collection resulting in a positive confirmatory test for an FDA EUA COVID-19 molecular assay for detection of SARS-CoV-2.[36]

Like the safety measures implemented in February, these new admission standards have succeeded.  Ten new prisoners have tested positive for COVID-19

---

[32] *See* ECF 71-29 at ¶¶  4, 5a – 5k, and ECF 71-1 at ¶¶  5 - 147.  *See also* District Court's June 6, 2020 Order acknowledging Respondents' measures, ECF 81 at p. 4:11-17.

[33] ECF 71-29 at ¶ 6.

[34] Johnson Dec. at ¶¶ 4 and 5.

[35] *Id.* at ¶ 6.

[36] *Id.*

---

during intake since June 9, 2020.[37] And each of those prisoners has – in accordance with the new standards – been isolated from the general housing units until no longer contagious.  As a result, not a single USMS prisoner has contracted COVID-19 at OMDC since May 28, 2020, and the general housing units remain virus-free.[38]

## II.    PROCEDURAL POSTURE

Petitioners initiated this action in April of 2020 by filing: (A) a "Motion for Class Certification;" (B) a "Complaint - Petition for Writ of Habeas Corpus and Injunctive and Declaratory Relief;" and (C) a "Motion for Emergency Temporary Restraining Order, and for Class-Wide Preliminary Injunction."[39]

The District Court has not ruled on Petitioners' motion for class certification.[40]

On May 1, Respondents filed a Motion to Deny the Petitioners' Writ of Habeas Corpus and Injunctive and Declaratory Relief.[41]  The District Court has not yet ruled on that motion.

On May 9, the District Court denied Petitioner's motion for a Temporary Restraining Order ("TRO") and for class-wide preliminary injunction.[42]  It ruled that the PLRA not only precludes Petitioners from obtaining a TRO, but that it also "divest[s] the Court of authority to grant the requested relief."[43]

Less than one week after the District Court denied the TRO motion, Petitioners filed a motion for a "Preliminary Injunction and Provisional Class Certification."[44] But the District Court also denied that motion, again ruling that the PLRA "applies to [Petitioners'] claim and restricts the Court's ability to order the

---

[37] *Id.* at ¶ 5.
[38] *Id.*
[39] ECF 3, 1, and 2, respectively.
[40] ECF 32.
[41] ECF 31.
[42] ECF 46.
[43] *Id.* at p. 9:1-4.  *See also* ECF 81 at p. 1:27-28.
[44] ECF. 61.

relief [Petitioners] seek."[45] Petitioners noticed their appeal of the District Court's order on August 4.[46]  The Ninth Circuit has not ruled on the appeal.

On August 24, Petitioners' Counsel sent an email to Respondents' Counsel, requesting an opportunity to conduct an inspection of OMDC so that they can "evaluate whether to move for a[nother] preliminary injunction . . . ."[47] Respondents declined the request and this discovery dispute ensued.

## III.    ARGUMENT

Petitioners' motion for expedited discovery should be denied because: (A) the District Court has already ruled that it has no authority to issue an injunction; (B) there is no good cause; and (C) habeas petitioners are rarely entitled to discovery.

### A.    The District Court Has Confirmed it Cannot Issue an Injunction

Under Fed. R. Civ. P. 26(b)(1), discovery must be "proportional to the needs of the case." Here, Petitioners demand an inspection of OMDC so that they can "'determine whether to seek an early injunction' regarding potential conditions reforms at Otay Mesa."[48] But the District Court has already ruled – on two separate occasions – that it has no authority to issue any injunction relating to the conditions of Petitioners' confinement.  Four months ago, the District Court denied Petitioners' motion for a TRO after determining that the PLRA "divest[s] the Court of authority to grant the requested relief."[49] And three months ago, the District Court denied Petitioners' motion for a preliminary injunction, again because the PLRA "restricts the Court's ability to order the relief [Petitioners] seek."[50] As a result of these two

---

[45] *Id.* at p. 2:13-15.
[46] ECF 82.
[47] Exhibit 1 to accompanying Declaration of Brett Norris.
[48] Petitioners' Position, *see* above at p. 6:18-20.
[49] *Id.* at p. 9:1-4.  *See also* ECF 81 at p. 1:27-28.
[50] ECF 81 at p. 2:13-15. Petitioners' claim that the District Court did not rule that it is prohibited from issuing an injunction (*see* p. 2:12-15 above) is just plain wrong.

rulings, an inspection of OMDC would be pointless. There is no evidence Petitioners could discover during an inspection that would suddenly vest this Court – or the District Court – with authority to issue an injunction. In this regard, Petitioners' request is not "proportional to the needs of the case," and it must be denied.  Moreover, an order granting Petitioners' motion would be inconsistent with the District Court's earlier rulings.

## B.   There is No Good Cause for Expedited Discovery

Even if the District Court's injunction rulings could be ignored, Petitioners request for expedited discovery would still fail. "In the Ninth Circuit, courts use the 'good cause' standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference."[51] Here, Petitioners argue there is good cause for a "prompt inspection" of OMDC before "another major outbreak."[52]

But Petitioners provide no evidence to suggest any future outbreak at OMDC, let alone a major or imminent one. Their motion is based entirely upon vague anecdotal evidence, set forth in the declarations of three criminal detainees, each of whom face serious federal charges.[53] Respondents, on the other hand, have produced detailed declarations from Chief Deputy U.S. Marshal Keith Johnson and OMDC Warden C. Larose, detailing the extensive measures taken at OMDC to

---

[51] *Synopsys, Inc. v. AzurEngine Technologies, Inc.*, 401 F. Supp. 3d 1068, 1076 (S.D. Cal. 2019) (denying motion for expedited discovery)(citing *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012)).

[52] Petitioners' Position, *see* above at p. 1:27-28. Petitioners argue an injunction may be "necessary to bring [OMDC] into compliance with CDC guidelines." *Id.* at p. 1:22-23. But even assuming Respondents were non-compliant with CDC guidelines (they are not), Petitioners cite no authority that would enable them to compel Respondents' compliance with "guidelines" (as opposed to compliance with law).

[53] Danielle Castagne (Case No. 20-cr-2165-BAS-LL) is charged with importation of methamphetamine; Billy Jo Reynolds (Case No. 19-cr-1787-BAS) is charged in a 42-defendant indictment with conspiracy to distribute methamphetamine and to launder money; and Mr. Broderick (Case No. 19-cr-4780-GPC) is, as noted above, charged with multiple counts of fraud.

reduce the spread of COVID-19.[54] And what is more, Respondents have produced irrefutable evidence that those extensive measures are working. As noted above, not a single USMS prisoner has contracted COVID-19 at OMDC since May 28, 2020.[55] That is over three months without a single instance of community spread. In other words, the USMS has eradicated COVID-19 from OMDC's general housing units.

The significance of that statistic – zero cases in over 100 days – is even more impressive when contrasted to the rates of infection at other nearby institutions.  The University of California at San Diego, for example, reports that 47 of its students tested positive for COVID-19 between April 3, 2020 and August 26, 2020.[56] And San Diego State University recently reported an astonishing 64 cases in just 10 days, between August 24, 2020 and September 3, 2020.[57] This contrast demonstrates that there is no imminent risk of a COVID-19 outbreak at OMDC. Indeed, based on these statistics, Petitioners are far less likely to contract COVID-19 inside OMDC than they are outside of it. And because Petitioners cannot dispute the numbers, they cannot demonstrate good cause for expedited discovery.[58]

Nor can Petitioners satisfy any of the other factors that courts often consider when assessing an expedited discovery request.[59] *First*, although "courts often find good cause [for expedited discovery] when confronted with a pending motion for

---

[54] Johnson Dec. at ¶¶ 6 – 11; LaRose Dec. at ¶¶ 7 – 129.

[55] Johnson Dec. at ¶ 4.

[56]*See* https://www.sandiegouniontribune.com/news/education/story/2020-08-26/ucsd-covid-19-infections-students.

[57] *See* https://www.latimes.com/california/story/2020-09-03/san-diego-state-coronavirus-cases-grow.

[58] "Good cause cannot . . . exist where the facts alleged do not provide a basis for relief." *United States v. Alba*, Nos. 01-cr-3177 W and 09-cv-1789 W, 2010 WL 2196100, at * 1 (S.D. Cal. June 1, 2010)(citing *Hubanks v. Frank*, 392 F. 3d. 926, 933 (7th Cir. 2004)).

[59] *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (quoting *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)).

preliminary injunction, they usually do not when presented with a party's mere inclination to file such a motion."[60] Here, there is no pending motion for a preliminary injunction.  Petitioners are merely considering whether to move for one sometime in the future. *Second*, Petitioners' inspection request is not narrowly tailored. In their Proposed Order (attached), Petitioners seek to give an undefined number of people access to "all areas of the Otay Mesa facility without limitation" for an unlimited time.[61] The Proposed Order would also permit much more than just an inspection. If adopted, it would allow members of the inspection group to conduct limitless onsite witness interviews, requiring that they be allowed to "speak with staff and persons detained in USMS custody in confidence and outside the hearing of the accompanying individuals assigned by [Respondents]," all while using "cameras, cell phones, writing implements, and any other equipment required to conduct the site visit."[62] *Third*, the purpose for requesting the inspection is, as discussed above, pointless. The District Court has twice confirmed that, no matter what the facts, the PLRA prohibits it from issuing an injunction in this case. *Fourth*, an inspection would impose an enormous burden on Respondents. Giving an undefined number of people unrestricted access to the entire facility for an unlimited time would undoubtedly disrupt Respondents' mission and operations. Moreover, Respondents would also be burdened with the difficult task of safeguarding the inspection team from the inmates, and of trying to ensure that the inspectors themselves do not re-introduce COVID-19 into the housing units. (Ironically, although Petitioners seek to ensure Respondents' strict adherence to

---

[60] *Mach 1 Air Servs., Inc. v. Mainfreight, Inc.*, No. CV-14-01444-PHX-SPL, 2015 WL 11181334, at *1 (D. Ariz. Mar. 5, 2015) (citing *Facebook, Inc. v. Various, Inc.*, 2011 WL 2437433, at *3 (N.D. Cal. Jun 17, 2011)).

[61] Petitioners' Proposed Order, submitted herewith, at ¶¶ 2 and 3.

[62] *Id.* at ¶¶ 3 and 4.  All of the criminal detainees are already represented by defense counsel in their individual criminal cases.  Petitioners' demand to speak with each of them confidentially without the consent of their defense counsel raises serious attorney-client privilege issues.

safety protocols at OMDC, their Proposed Order would excuse their own inspection team from many of those protocols, such as quarantining before entering the facility, restricting movement within the facility, and requiring social distancing from the inmates.) *Finally*, given the District Court's rulings, Petitioners are not entitled to any discovery at all, let alone expedited discovery.  Respondents' motion to deny Petitioners' Writ of Habeas Corpus – which is still pending – is based on the same arguments that defeated Petitioners' TRO and preliminary injunction motions.[63]  If the District Court follows its previous rulings (as it likely will) it will grant the motion and there will be no discovery. But in any case, in the interest of judicial economy, there should be no discovery – expedited or otherwise – until after: (1) the District Court rules on the motion to deny's threshold arguments; and (2) the Ninth Circuit rules on Petitioners' appeal. In sum, Petitioners have failed to establish good cause for expedited discovery and their motion should be denied.

### C.    No Discovery in Habeas Cases

In addition to the foregoing, Petitioners' motion also fails because this is a habeas case. The Supreme Court holds that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."[64] A habeas petitioner may only obtain discovery by showing good cause.[65] Courts should not, however, "allow [habeas petitioners] to use . . . discovery for fishing expeditions to investigate mere speculation."[66] "To obtain discovery . . . a defendant must present facts which would tend to show that the Government is in possession of information <u>helpful to the defense</u>."[67] A habeas petitioner's "[g]eneralized statements about the possible existence of discovery material are

---

[63] ECF 31.

[64] *Bracy*, 520 U.S. at 904.

[65] Fed. R. Governing § 2255 Proceedings 6(a).

[66] Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996).

[67] *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)(underline added).

insufficient to constitute 'good cause.'"[68] A habeas case is not an opportunity for petitioners to "explore their case in search of its existence." [69]

Petitioners' request for a site inspection fails for several reasons. *First*, as detailed above, good cause is lacking.  Their claim of a "crisis" at OMDC is based entirely upon the conclusory statements of three criminal inmates that are inconsistent with the indisputable facts (e.g., zero cases among USMS detainees in three months). *Second*, the request is the very definition of a fishing expedition. Petitioners seek an inspection for the purpose of determining "the possible existence of discovery material" that might be used to support yet another injunction motion (that the District Court has ruled it cannot grant).[70] And *third*, Petitioners cannot show how the inspection might produce "information helpful to the defense" of their individual criminal cases.[71] And that is because they challenge the "conditions" of their confinement, rather than the "fact" of their confinement. The District Court has already ruled – twice – that such a challenge is improper in a habeas case.[72]

## III.  **CONCLUSION**

Petitioners' motion must be denied because: (1) the District Court has twice ruled that the PLRA prohibits it from issuing an injunction; (2) there is no good cause for early discovery; and (3) habeas petitioners are generally not entitled to discovery.

---

[68] *Gonzalez v. Bennett*, No. 00 Civ. 8401(VM), 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001).

[69] *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999)(denying habeas petitioners request for discovery)(citing *Calderon v. U.S.D.C. (Nicolaus),* 98 F.3d 1102, 1106 (9th Cir.1996).  *See also Torres v. Diaz*, Case 19-cv-1964-LAB-JLB, 2020 WL 905361, at *4 (S.D. Cal. February 24, 2020)(denying habeas petitioner's request for discovery).

[70] *Gonzalez*, 2001 WL 1537553, at *4.

[71] *Mandel*, 914 F.2d at 1219 (citations omitted).

[72] ECF 46 at pp. 5:12 – 6:16 and 7:25 – 8:2; and ECF 81 at 5:7 – 8-3.

---

1

2

3

4   DATED: September 10, 2020

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,


**ROPES & GRAY LLP**

*s/ Alexander B. Simkin*


**JOAN MCPHEE**
(joan.mcphee@ropesgray.com)
**ALEXANDER B. SIMKIN**
(alexander.simkin@ropesgray.com)
**HELEN GUGEL**
(helen.gugel@ropesgray.com)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000

**NICOLE HOROWITZ**
(nicole.horowitz@ropesgray.com)
Three Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 315-6300

**NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD**

**SIRINE SHEBAYA**
(sirine@nipnlg.org)
**MATTHEW VOGEL**
(matt@nipnlg.org)
2201 Wisconsin Ave, NW
Suite 200
Washington, DC 20007
Telephone: (617) 227-9727

**ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL
COUNTIES**

**MITRA EBADOLAHI**
(mebadolahi@aclusandiego.org)
**BARDIS VAKILI**
(bvakili@aclusandiego.org)
**SARAH THOMPSON**
(sthompson@aclusandiego.org)
**DAVID LOY**
(davidloy@aclusandiego.org)
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4187

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

**Z. GABRIEL ARKLES**
(garkles@aclu.org)
**CLARA SPERA**
(cspera@aclu.org)
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569

*Attorneys for Plaintiff-Petitioners*

DATED: September 10, 2020

ROBERT S. BREWER JR.
United States Attorney

*s/ Brett Norris*
BRETT NORRIS
Deputy Chief, Civil Division
Assistant U.S. Attorney
PAUL STARITA
Assistant U.S. Attorney
*Attorneys for Defendant-Respondents*